933 F.2d 1002
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Norman HODGE, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Isadore GARTRELL, Defendant-Appellant.
 Nos. 90-5161, 90-5162.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 30, 1990.
Decided May 21, 1991.
 
 Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. James C. Cacheris and Claude M. Hilton, District Judges. (CR-89-305-A)
 Christopher Dean Latsios, Fairfax, Va., Joseph John McCarthy, Dawkins, Hanagan, McCarthy & Sengel, Alexandria, Va., for appellant Hodge.
 David Harrison Hopkins, Fairfax, Va., (Argued) for appellant Gartrell; James G. Kincheloe, Jr., Fairfax, Va., on brief.
 Bernard James Apperson, III, Assistant United States Attorney, Alexandria, Va., (Argued), for appellee; Henry E. Hudson, United States Attorney, W. Neil Hammerstrom, Jr., Assistant United States Attorney, Alexandria, Va., on brief.
 E.D.Va.
 AFFIRMED.
 Before POWELL, Associate Justice (Retired), United States Supreme Court, sitting by designation, PHILLIPS, Circuit Judge, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Norman Hodge and Isadore Gartrell appeal from their 1989 convictions for conspiracy to commit murder, in violation of 18 U.S.C. Sec. 1117, and first degree murder, in violation of 18 U.S.C. Sec. 1111 and 2, in connection with the death of their fellow inmate at Lorton Reformatory, Lawrence Chase. Hodge and Gartrell argue for reversal on the basis of several alleged trial errors as well as on the basis of misapplication of the Sentencing Guidelines. We affirm the convictions as well as the trial court's sentencing determinations.
 
 
 2
 * On April 13, 1989, in Lorton Reformatory, Lawrence Chase, an inmate, was stabbed to death. Hodge, Gartrell, and a third inmate, Mark Harris, were indicted for the murder. Gartrell was tried first. Hodge and Harris were tried together in a second proceeding.
 
 
 3
 At both trials, the government offered the testimony of a number of inmates who described the events of April 13. The testimony showed that around 8:00 p.m., Hodge and Gartrell arrived at the prison weight room where Hodge identified Chase for Gartrell. Shortly thereafter, Hodge and Gartrell entered the prison dormitory where Chase had returned from his workout. The two men approached Chase who was standing near his bed. Hodge and Gartrell both drew knives and Hodge tried to escape his assailants, jumping from cot to cot. Hodge and Gartrell caught Chase, however, and stabbed him repeatedly.
 
 
 4
 Gartrell offered an alibi defense, claiming that he was elsewhere at the time of the murder. Hodge, on the other hand, admitted that he participated in the incident, but denied inflicting the fatal wound. Hodge claimed that he had heard a rumor that Chase intended to kill him, and that he approached Chase to discuss this rumor the morning of April 13. He stated that Chase admitted his plan but agreed not to kill Hodge. Hodge testified that Gartrell actually instigated the fight that resulted in Chase's death.
 
 
 5
 Gartrell and Hodge were both convicted by their respective juries. Harris was acquitted. The court determined that the appropriate Sentencing Guideline level for both Hodge and Gartrell was 43. It then sentenced both men to life imprisonment. Hodge and Gartrell now appeal.
 
 II
 
 6
 Hodge first argues that the trial court erred in allowing the prosecution to present graphic photographs of Chase's nude body, showing various stab wounds. The photographs explicitly showed the extent of damage done to Chase's body during the fatal attack. Hodge contends that these photos were used merely to inflame the jury and that the information contained in them could have been conveyed just as easily through artist sketches. The government counters that these exhibits, by showing the number, location, and size of the various wounds, were probative of premeditation and also proved that Hodge--not Chase--was the aggressor.
 
 
 7
 The only issue before us is whether the probative value of the photographs outweighed their prejudicial effect. The trial court necessarily determined that these admittedly gruesome photographs had significant probative value, in view of their obvious potential for unfairly prejudicing the jury. We agree. Given the critical dispute about the circumstances of the wounds' infliction, whether they were the result of a premeditated deadly assault or of a desperate effort merely to defend against a deadly aggressor, we cannot fault the court's striking of the balance. There was no abuse of discretion in admitting the photographs.
 
 
 8
 Hodge next argues that the court erred in denying his motion for a mistrial. The government presented one inmate witness, Anthony Derrington, who, once called to the witness stand, refused to testify. The government's next witness, Isaiah Hill, then suggested he (Hill) had been threatened. Hodge immediately objected to Hill's line of testimony, and the objection was sustained but Hodge declined the court's proffer of a corrective instruction. Hodge argues that the two incidents, back to back, served to deprive him of a fair trial because they unfairly implied to the jury that Hodge had been intimidating witnesses. The government responds that Hill never identified who had intimidated him, that Derrington never explained why he would not testify, and that the jury could have drawn any number of inferences about why Derrington chose not to answer questions.
 
 
 9
 By virtue of Hodge's prompt objection, Hill's testimony regarding prior threats was limited. We cannot conclude that there was sufficient danger of prejudice from it to Hodge to require a mistrial. We agree with the government that such an inference is much too speculative to require aborting this trial.
 
 
 10
 Hodge next argues that he was denied his right to counsel and to confront witnesses when he was forbidden to attend a bench conference between the judge, counsel, and Derrington. When Derrington refused to testify, the government made a proffer that Derrington had been threatened by friends of Hodge. The court then called a bench conference, stating that "if he says he is threatened, I am going to hear him at the bench." Hodge requested permission to attend this bench conference--the only time during the whole trial in which Hodge sought to exercise this right--and the court refused his request.
 
 
 11
 "The right to be present at every stage of trial does not confer upon the defendant the right to be present at every conference at which a matter pertinent to the case is discussed, or even at every conference with the trial judge at which a matter relative to the case is discussed." United States v. Vasquez, 732 F.2d 846, 848 (11th Cir.1984). The whole purpose of having this bench conference was to isolate Derrington to determine whether Hodge or his friends had threatened him. If Hodge had been allowed to join this bench conference, Derringer might not have felt free to speak truthfully to the court. The only way the court could hope to determine the accuracy of the government's proffer was to speak with Derrington outside of Hodge's presence. The court's decision to exclude Hodge from this conference was not an abuse of discretion.
 
 III
 
 12
 Hodge appeals his sentence on several grounds. First, he argues that the district court was clearly erroneous in denying him a two-level sentence reduction for acceptance of responsibility. Section 3E1.1 of the Sentencing Guidelines provides that "[i]f the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels." The Guidelines also explain that:
 
 
 13
 [t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation.
 
 
 14
 U.S.S.G. Sec. 3E1.1, Application note 5.
 
 
 15
 While Hodge conceded at trial that he had been involved in the stabbing of Chase, he denied responsibility for the fatal wound. He also claimed his role was defensive, rather than offensive. In addition, his pretrial conduct, such as denying all involvement in the incident when interviewed by the F.B.I., suggests a failure to accept responsibility for his actions. Although Hodge did admit that he participated in the stabbing of Chase, the court concluded that he had not evidenced acceptance of responsibility sufficient to support a two-level sentence reduction. A sentencing judge is in "a unique position to carefully examine the particular circumstances of each case," United States v. White, 875 F.2d 427, 431 (4th Cir.1989), and the court here had several bases for concluding that Hodge had not accepted responsibility for his actions. The court did not err in this.
 
 
 16
 Hodge next contends that the district court erred in failing to rule on his request for a downward departure under Guideline Sec. 5K2.12, which authorizes departure upon a finding that a crime was committed under serious coercion or duress. The record indicates that the court indeed failed to address this request with any explicit ruling, though it obviously did not grant it.
 
 
 17
 A decision not to depart downwardly, for any reason, including that urged here, is simply not appealable, United States v. Bayerle, 898 F.2d 28, 30 (4th Cir.1990), unless it appears that the sentencing court's refusal to depart may have been based on a legal misapprehension that under the circumstances it had no power to depart. Id. at 31. Where appellate courts have been unable to tell from the record whether a refusal may have been based on such a legal misapprehension rather than on discretion, they have sometimes felt it necessary to remand to have the lower court's reason made explicit. See, e.g., United States v. Sharpsteen, 913 F.2d 59, 63-64 (2d Cir.1990). We obviously would have been aided here by an explicit ruling in order to determine whether it was appealable, and they should routinely be made for that reason. Here, however, we are satisfied that a remand for that purpose is not warranted. Under the circumstances we are satisfied that the court properly accepted the jury's necessary rejection of Hodge's selfdefense theory and its acceptance of the government's theory of premeditated murder as scotching any finding for sentencing purposes that Hodge acted under coercion or duress.
 
 
 18
 Hodge next contends that the district court erred in concluding that it was required to sentence him to life imprisonment. Hodge argues that had the sentencing level been less than 43, the court would have been permitted to impose either a term of life imprisonment or some lesser, determinate sentence. We need not reach the question whether the court was compelled to sentence Hodge to life in prison, however. The court concluded that the appropriate sentencing level for Hodge was 43. The Guidelines provide a sentence of life imprisonment for individuals sentenced at level 43. Because the court did not err in calculating Hodge's sentencing level, it did not err in imposing a life sentence. Consequently, we need not address the district court's alternative finding that, regardless of Hodge's guideline sentencing level, 18 U.S.C. Sec. 1111 requires a court to sentence all defendants convicted of first degree murder to life imprisonment.[1]
 
 
 19
 Finally, Hodge argues that the court erred in denying his motion for leave to contact jurors following trial. He argues that a prejudicial article published in a Washington newspaper during the trial might have influenced jurors had they read it. There is no merit to this argument.
 
 IV
 
 20
 Gartrell's first claim is that the district court erred in admitting the grand jury testimony of an unavailable witness, Antonio Nelson. Nelson had testified before a grand jury regarding Gartrell's involvement in the murder of Chase. When called at trial, however, Nelson refused to testify, stating that "I was pushed into doing something I didn't want to do. You know I was threatened about this whole situation." The government then moved to introduce Nelson's grand jury testimony. It was admitted over Gartrell's objection.
 
 
 21
 Gartrell argues that this testimony was inadmissible under Federal Rule of Evidence 804, and that the district court therefore abused its discretion. In particular, Gartrell contends that this testimony was lacking in trustworthiness because Nelson's refusal to testify at trial demonstrated that his grand jury testimony had been coerced by the prosecution. Nelson's grand jury testimony was corroborated by other witnesses. This sufficed under the circumstances to establish its trustworthiness.
 
 
 22
 Gartrell next argues that the court erred in refusing to charge the jury on the lesser included offense of second degree murder. A "defendant is entitled to an instruction on a lesserincluded offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973). Here, Gartrell offered a defense of alibi. He claimed that he was not present in Chase's dormitory at the time of the murder and therefore could not have committed the murder. His defense, therefore, did not rely on negating certain elements of the prosecution's case. If the jury accepted any of Gartrell's claims, it would have had to acquit him. If it rejected his alibi defense, the jury would have had no basis in the record for finding Gartrell guilty of anything less than first degree murder.
 
 
 23
 We need not hold that a lesser included offense charge never could be warranted when a defendant defends solely on the basis of alibi to conclude, as we do, that under the circumstances of this case the district court did not err in declining such an instruction.
 
 
 24
 Finally, like Hodge, Gartrell challenges the district court's alternative sentencing finding that all defendants convicted of first degree murder must be sentenced to life in prison, regardless of their Guideline sentencing level. Like Hodge, however, Gartrell was correctly sentenced at level 43, and was therefore subject to a sentence of life imprisonment. We therefore affirm the sentence.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 The Third Circuit held in United States v. Donley, 878 F.2d 735 (3d Cir.1989), that under 18 U.S.C. Sec. 1111, life imprisonment is a mandatory sentence for first degree murder, regardless of the sentencing level authorized by the guidelines
 In most cases, an individual convicted of first degree murder will be sentenced at level 43, which provides for a non-discretionary sentence of life in prison. We explicitly do not reach the question here of whether 18 U.S.C. Secs. 3359 and 3381, in tandem, supersede the mandatory sentence imposed by 18 U.S.C. Sec. 1111, in cases where mitigating factors reduce the sentencing level, and permit a guidelines sentence of less than life in prison.