21616

The STATE, Appellant, v. Larry LOGAN, Respondent.
(286 S. E. (2d) 125)

*Atty. Gen. Daniel R. McLeod, Asst. Atty. Gen. Lindy P. Funkhouser . and Senior Asst. Atty. Gen. Brian P. Gibbes,* Columbia, and *Sol. James O. Dunn,* Conway, *for appellant.*

*David I. Bruck, Columbia,* and *Jack M. Scoville, Jr.,* and *Douglas L. Hinds,* Georgetown, *for respondent.*

January 4, 1982.

Lewis, Chief Justice:

The sole question presented in this appeal involves the applicability of the current death penalty statute to a crime committed prior to its effective date.

A brief history of our present death penalty statute for murder, as influenced by court decisions, is necessary in order to focus upon the issue now before the Court.

The long established public policy of this State, with reference to the death penalty for murder, was set forth in Section 16-52 of the 1962 Code of Laws, which provided that "whoever is guilty of murder shall suffer the punishment of death," but upon recommendation of mercy by the jury the punishment was reduced to life imprisonment. However, as pointed out in *Hitter v. McLeod*, 274 S. C. 616, 266 S. E. (2d) 418, the application of the death penalty under procedures such as provided in Section 16-52, *supra*, was invalidated by the United States Supreme Court in *Furman v. Georgia*, 408 U. S. 238, 92 S. Ct 2726, 33 L. Ed. (2d) 346 (1972).

In 1974, the General Assembly sought to provide for an effective enforcement of the death penalty and enacted amendments to Section 16-52, specifying the circumstances under which the penalty of death for murder could be enforced. 58 Statutes at Large 2361. These amendments resulted from efforts to cure the constitutional defect condemned in *Furman*.

Subsequently, in response to the decisions of the United States Supreme Court in *Woodson v. North Carolina*, 428 U. S. 280, 96 S. Ct. 2978, 49 L. Ed. 944 and *Roberts v. Louisiana*, 428 U. S. 325, 96 S. Ct. 3001, 49 L. Ed. (2d) 974, we declared the mandatory death penalty provisions of Section 16-52, as amended in 1974, unconstitutional. *State v. Rumsey*, 267 S. C. 236, 226 S. E. (2d) 894.

However, an effective procedure for the enforcement of the death penalty was finally enacted in this State on June 8, 1977 (now Section 16-3-20 et seq., Supplement to the 1976 Code of Laws), some nine (9) months after respondent allegedly committed the murder of which he is here charged. See *State v. Shaw*, 273 S. C. 194, 255 S. E. (2d) 799.

Respondent was indicted for murder in the commission of an armed robbery. The State noticed the intention to seek the death penalty, under the penalty provisions of Section 16-3-20, *supra*, enacted after the commission of the alleged murder. Respondent then moved for an order prohibiting the State from seeking the death penalty since the alleged crime, admittedly, occurred at a time when the State had no operative death penalty statute. The trial judge agreed and granted

respondent's motion, holding that the only penalty for murder in this State on the date of the alleged crime was life imprisonment and to allow the imposition of the subsequently enacted death penalty would violate the constitutional provisions, both State and Federal, against ex post facto laws. The State has appealed. We affirm.

It is undisputed that the maximum punishment for murder in South Carolina was life imprisonment when the alleged crime was committed; and that an operative death penalty was not reinstated in this State until approximately nine (9) months after respondent allegedly committed murder.

Since there was no operative death penalty statute in this State when respondent allegedly committed the crime charged, the act of respondent could not trigger the death penalty without violating the ex post facto prohibition against retroactive laws creating a greater punishment than would have attached under the law at the time of the offense.

The State argues, however, relying on *Dobbert v. Florida,* 432 U. S. 282, 97 S. Ct. 2290, 53 L. Ed. (2d) 344, that, since 1869, the statutes of this State have continuously declared that the penalty for murder was death, which gave notice to all defendants of the penalty the State would seek to impose if convicted of murder; and that only the procedural methods of enforcement have been declared to be constitutionally defective. We do not think that *Dobbert* is controlling.

In *Dobbert,* the murder was committed at a time when a Florida statute was in effect that prescribed the death penalty for murder. After the crime, but before trial, the existing statutory death penalty provisions were declared unconstitutional and Florida then adopted a bifurcated trial procedure with other procedural safeguards; under this new statute the defendant was tried and sentenced to death. The United States Supreme Court held that the existence of a death penalty statute at the time of the commission of the crime, although the death penalty provisions were subsequently declared unconstitutional, served as an operative fact to warn the defendant of the possibility of the death penalty; and that subsequent procedural and on the whole ameliorative

changes in the statute which rendered the previous death penalty provisions effective did not constitute an ex post facto violation.

The fact that the death penalty provisions of our statute were declared unconstitutional prior to the commission of the crime distinguishes the present case from *Dobbert*. When Dobbert committed the crime, a Florida statute permitted the death penalty for the offense. When respondent allegedly committed the crime in this case, there was no South Carolina statute which permitted the death penalty for murder. There was, therefore, no "operative fact", as in *Dobbert*, to warn respondent that the State would seek to impose the death penalty if he were convicted.

Although the provisions of our statute for the enforcement of the death penalty were declared unconstitutional, the death penalty was not declared to be unconstitutional per se, and there remained the unenforceable statutory declaration that whoever is convicted of murder shall suffer the punishment of death. The State argues that this statutory declaration was an "operative fact" which served to warn respondent of the penalty which South Carolina would seek to impose if he were convicted. We do not think the mere declaration that the punishment for murder shall be death, with no means or authority to enforce it, could serve to warn a defendant that the State might seek the death penalty if he committed murder. The fact remains that, despite this statutory declaration, the maximum punishment under the statute was life imprisonment. The statutory declaration had to be ignored by the courts and constituted no legally effective warning to the public.

The judgment is accordingly affirmed.

LITTLEJOHN, NESS, GREGORY and HARWELL, JJ., concur.