UNITED STATES of America,

v.

Malcolm C. DONLEY, Appellant.

No. 88–5929.

United States Court of Appeals,
Third Circuit.

Argued April 25, 1989.

Decided June 30, 1989.

Rehearing and Rehearing In Banc
Denied Sept. 28, 1989.

David E. Schafer (argued), Asst. Federal Public Defender, Trenton, N.J., for appellant.

Edna Ball Axelrod (argued), Chief, Appeals Div., Samuel A. Alioto, Jr., U.S. Atty., Newark, N.J., for U.S.

Before: HIGGINBOTHAM, STAPLETON and WEIS, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

This is an appeal of a sentence of life imprisonment for a conviction of first degree murder imposed under the new guidelines ("Sentencing Guidelines") promulgated by the United States Sentencing Commission, pursuant to the Sentencing Reform Act of 1984, as amended, 18 U.S.C. § 3551 *et seq.* (Supp. V 1987), and 28 U.S.C. §§ 991–998 (Supp. V 1987). In addition, the appellant challenges a number of evidentiary and other rulings by the district court. This court has jurisdiction in the appeal of the final judgment of the district court under 28 U.S.C. § 1291 (1982). We will affirm.

## I.

Except as noted, the following facts are essentially undisputed. Linda K. Donley was serving as a Sergeant in the United States Air Force at the time of her murder. She lived with her husband, Malcolm C. Donley ("Donley"), and their daughter in family housing at McGuire Air Force Base, where she was stationed. Appellant's Appendix ("App.") at 187–191, 194. The Donleys had been having domestic difficulties for some months, and the McGuire Housing Office was considering terminating Mrs. Donley's entitlement to base housing because of domestic disturbances at her residence. App. at 290–297, 331–333. Mrs. Donley wanted to separate from her husband. She had devised a plan to convince him that they were being evicted and that she was going to move in with her parents. She hoped that he would move out of their home first, and she would then stay on in the base housing. App. at 200, 292–293, 333–336. The day before her death, Linda Donley had begun to pack, and her mother, who was visiting her, heard her mention to her husband the impending move and the separation. App. 204–208. The following night, her husband Malcolm Donley killed her by repeatedly striking her in the head with a hatchet and a meat cleaver. App. 438–442. He also cut her neck with a knife. App. 442–443.

Mr. Donley never denied killing his wife, but claimed that he had done so in the heat of passion shortly after finding her in their bedroom with another man. App. 154, 549–551. The prosecution introduced evidence to show that Mrs. Donley had gone to bed and was asleep when her husband attacked and killed her. App. 210–212, 346, 348, 375, 427, 433, 445–446. The jury returned a conviction of murder in the first degree. The Presentence Report, App. 7–17, recommended no departure from the Sentencing Guidelines and the district court imposed a sentence of life imprisonment, which it considered to be mandatory under federal law for first degree murder.

## II.

The appellant challenges a number of evidentiary and other rulings by the

district court, only one of which we will discuss here.[1] He claims that the District Court erred in allowing the government to introduce testimony by the victim's mother, Mrs. Brown, as to hearsay statements by the victim to show her plan and state of mind. Donley claims, first, that the statements were inadmissable hearsay used to prove his own future conduct, and second, that they were extremely prejudicial to him. Our standards of review for the two claims are different. With regard to the second, whether the evidence should have been excluded on grounds of prejudice, our standard is abuse of discretion. *In re Japanese Electronic Products*, 723 F.2d 238, 260 (3d Cir.1983), *rev'd on other grounds, Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

With regard to the first question, whether the statements of the victim's mother qualify as an exception to the rule barring hearsay evidence under Rule 803(3) of the Federal Rules of Evidence, our review is plenary. Federal Rule of Evidence 803(3) provides for an exception to the hearsay rule if the statement is introduced to show the declarant's then existing state of mind, such as his intent, plan or design.[2] The evidence may also be used to prove or explain acts or conduct of the declarant. The question for us on review is whether the statements indeed go to show what the government claims they show. That is a question of relevancy [3] and our standard of review for relevancy rulings is plenary. *Brobst v. Columbus Services Int'l*, 824 F.2d 271, 274 (3d Cir.1987); *In re Japanese Electronic Products*, 723 F.2d at 269.[4]

■ The government used Mrs. Brown's testimony to show that the deceased had a plan to convince her husband that they were being evicted, and that she acted shortly before her death to further her plan. Linda Donley had started packing up the apartment and her mother testified that she heard her daughter make several statements to the appellant regarding the packing, the separation agreement and the division of property. App. 200–208. Donley claims that the testimony was used to show not just the plan and state of mind of the deceased, but also his future conduct. We do not agree. The testimony went not to

1. We have reviewed and found without merit Donley's claims that:
(1) the trial court should have suppressed the appellant's statements to the FBI because they were involuntary;
(2) the trial court should have suppressed as unfairly prejudicial the introduction of the uncovered hatchet when it had been wrapped with cloth and tape at the time it was used to murder the victim;
(3) the trial court should have suppressed as unfairly prejudicial certain color photographs of the deceased and of the murder scene;
(4) the trial court should have created a new federal physician-patient privilege and used it to suppress appellant's statements to the physician who treated him for self-inflicted wounds shortly after the murder; and
(5) there was not sufficient evidence of premeditation for the jury to have found the appellant guilty of first degree murder.

2. The Federal Rules of Evidence provides that the following are not excluded by the hearsay rule:
A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain and bodily health)....
Fed.R.Evid. 803(3).

3. Weinstein and Berger note a confusion caused by the confounding of hearsay and relevancy under this rule:
The draftsmen of Rule 803(3) deliberately eliminated language in Uniform Rule 63(12)— "when such a mental or physical condition is in issue or is relevant to prove or explain acts or conduct of the declarant"—on the ground that this requirement relates to relevancy rather than hearsay. This does not mean that under Rule 803(3) evidence of a statement of intent to do an act is no longer admissible to prove that the act was done. It merely means that whether the inference from intent to act may be drawn is a matter of relevancy rather than a concern of the hearsay rule. Recognition of the two separate questions involved may dispel some of the confusion in this area.... Consideration of this problem under the heading of hearsay obscures the factors involved.
J. Weinstein & M. Berger, 4 *Weinstein's Evidence*, ¶ 803(3)[04] at 803–115–116.

4. While we have delineated the standards of review for these two issues, we emphasize that, in this case, the rulings of the district court would be affirmed regardless of whether then standard of review should be plenary or abuse of discretion.

show that the defendant was soon to kill the declarant, but, rather, to show the existence of the deceased's plan to move out of the base apartment and separate from her husband. The government properly sought to persuade the jury to infer from her statements that she had such a plan and, in turn, to infer from that plan and the defendant's awareness of it that he had a motive for murder other than the one he claimed. The motive for murder was contested. The appellant claimed that he killed his wife because he had found her with another man. The government claimed, however, that the defendant killed her because of the imminent marital separation. The government was entitled to introduce testimony from which the jury might reasonably infer the existence of the motive the government proposed, provided the testimony was not inadmissible on other grounds.[5]

Under *Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892), out-of-court statements showing the declarant's intention were admitted because his intention "was a material fact bearing upon the question in controversy." *Id.* at 299–300, 12 S.Ct. at 914. *See also U.S. v. Calvert,* 523 F.2d 895 (8th Cir.1975). Donley contends that the testimony by Mrs. Brown was unnecessary because the victim's plan was not disputed, and the hearsay testimony should therefore have been excluded. It is true that the uncontested testimony of another witness, Captain Swanson, showed the existence of the plan. App. 292–293. However, the mother's testimony was needed to show that the victim was putting into effect her plan to separate from the appellant and to force him out of the base housing shortly before she was killed. It was not just the existence of the plan, the government claims, but its imminent realization, that provided the motive for murder.

Donley further argues that the hearsay statements of the victim cannot go to show his motive because Mrs. Brown could testify only that her daughter had said them, not that he had heard or responded to them. App. 204–206. He concludes that they therefore should not have been admitted. The fact that the mother could not be certain that the appellant heard what the victim had said does not make the testimony inadmissible, nor does it mean that it cannot be useful in establishing motive. The testimony offers evidence from which the jury might have inferred that the appellant heard the statements (Applt's App. 206–207), but even if he did not hear them, the evidence was still admissible. Statements admitted under Fed.R.Evid. 803(3) to show the declarant's intent or plan may be used to show that the declarant acted in accord with that plan. *See Mutual Life Insurance Co. v. Hillmon,* 145 U.S. 285, 12 S.Ct. 909, 36 L.Ed. 706 (1892); *U.S. v. Calvert,* 523 F.2d 895 (8th Cir.1975).[6]

 Lastly, the appellant claims that the testimony of the victim's mother, even if relevant, was extremely prejudicial to him. Prejudice does not in itself, however, make the testimony inadmissible. The question that the trial court had to decide was whether the probative value of the testimony was outweighed by the danger of unfair prejudice. Fed.R.Evid. 403. Mrs. Brown's testimony was relevant, as discussed above, and nothing in the record suggests that it was overly emotional. The district court concluded that the danger of unfair prejudice did not outweigh the probative value of the testimony, and we con-

---

5. Donley argues that the testimony should have been excluded because the choice of motives was "of little relevance" to the finding of first degree murder, and that the particular motive "had minimal probative value on whether appellant had the requisite premeditation before he killed his wife." Applt's Reply Brief at 1. We cannot be certain that, if appellant's claimed motive had gone uncontested, the jury would have returned the same verdict of first degree murder. The motives proposed by the two sides were accompanied by different versions of the facts immediately prior to and during the killing. The government's version of the facts does not comport with appellant's version of the motive. The government was entitled to present a coherent version of what it claimed had happened.

6. In *Calvert,* 523 F.2d 895 at 910, as in this case, the evidence was introduced to show that the deceased declarant had acted in accord with his plan, and that went to establish a motive.

clude that the district court did not abuse its discretion in making that determination. We therefore hold that the district court acted properly in admitting the hearsay evidence by the victim's mother to show the victim's state of mind and plan.

### III.

■ Appellant was sentenced under the Sentencing Guidelines promulgated by the United States Sentencing Commission pursuant to the Sentencing Reform Acts of 1984 and 1987, 18 U.S.C. § 3551 *et seq.* (Supp. V 1987) and 28 U.S.C. §§ 991–998 (Supp. V 1987). Appellant contends that a sentence of life imprisonment is not mandatory, and that the District Court erred in imposing one on that basis.[7] Our review of the district court's interpretation of federal law is plenary. *Chrysler Credit Corp. v. First National Bank and Trust Co.*, 746 F.2d 200, 202 (3d Cir.1984).

■ To consider appellant's contention that a sentence of life imprisonment for first degree murder is not mandatory, we must first examine the underlying statute describing the offense of which appellant was convicted, 18 U.S.C. § 1111. That statute reads in relevant part, "(b) Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict by adding thereto 'without capital punishment', in which event he shall be sentenced to imprisonment for life; ..."[8]

Donley contends that 18 U.S.C. § 3559 (Supp. V 1987), § 3581 (Supp. V 1987) and the Sentencing Guidelines supercede § 1111 and confer on the trial judge the discretion to impose a sentence for first degree murder less than the life sentence prescribed by § 1111. Without question, the Sentencing Reform Acts of 1984 and 1987 made major changes in the sentencing of federal offenders, but whether they meant to change the statutory minimum penalties for first degree murder is another question.

Title 18 U.S.C. § 3559 assigns letter grades to offenses that previously had none on the basis of the maximum terms of imprisonment authorized by the statutes describing the offenses. One letter grade comprises offenses that carry different statutory penalties in the underlying statutes describing them. For example, first and second degree murder are both classified as Class A felonies under § 3559.[9]

Title 18 U.S.C. § 3581 establishes sentences for crimes falling within each letter grade classification, and reads in pertinent part:

(b) The authorized terms of imprisonment are—

(1) for a class A felony, the duration of the defendant's life or any period of time;

(2) for a class B felony, not more than twenty-five years;

18 U.S.C. § 3581(b). Sub-sections 3581(b)(2) to (b)(9) set out penalties for particular classes of offenses with the words "not more than" a certain number of years, or months, or days. From our reading of the statute, we find that the section is concerned only with establishing maxi-

---

**7.** We find no merit in appellant's other assertions that the underlying statute defining the crime for which he was sentenced, 18 U.S.C. § 1111 (1982 and Supp. V 1987), is unconstitutionally vague; that it did not prescribe a statutory minimum sentence of life imprisonment because of the possibility of parole; and that it does not now carry a statutory minimum.

**8.** 18 U.S.C. § 1111. Since the discretionary imposition of the death penalty was held unconstitutional in *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972), defendants found guilty of first degree murder in federal courts have automatically been sentenced to life in prison, as was Donley.

**9.** 18 U.S.C. § 3559 reads in relevant part:

(a) Classification.—An offense that is not specifically classified by a letter grade in the section defining it, is classified if the maximum term of imprisonment authorized is—

(1) life imprisonment, or if the maximum penalty is death, as a Class A felony;

18 U.S.C. § 3559 (Supp. V 1987), *as amended by* Pub.L. No. 100–690, Title VII, § 7041, Nov. 18, 1988, 102 Stat. 4399. 18 U.S.C.A. § 3559 (West Supp. 1989). The amendment, which took effect after the crime in this case was committed, changed the lettering and numbering of the section above, but did not affect its substance. We have quoted the current version of the section.

mum penalties and does not address the question of minimum sentences. Our review of the legislative history of § 3581 supports our statutory interpretation. The Senate Committee's Report states, "It must be remembered that the terms set forth are the maximum periods for which a judge is authorized to sentence an offender in each such category." S.Rep. No. 225, 98th Cong., 2d Sess. 114, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3297.

Donley argues that the wording of the statute in § 3581(b)(1), setting the penalty as "the duration of the defendant's life or any period of time", confers on the District Court the discretion to impose a sentence less than life imprisonment for *any* Class A felony conviction, including those that were given a letter grade classification for the first time in § 3559, such as first degree murder. Donley's argument implies that Congress, in passing § 3581(b)(1), meant to set a new minimum penalty for first degree murder of "any period of time," superceding the old minimum of life imprisonment under § 1111.

We find this argument to be untenable for several reasons. First, as discussed above, we find that § 3581 deals only with maximum penalties, not with minimums. Second, we find that Congress did not mean to replace a fixed minimum sentence for first degree murder with an indeterminate sentence; the legislative history of the Sentencing Reform Act makes it clear that Congress intended to go in the opposite direction of achieving more consistent, determinate sentences. *See* S.Rep. No. 225, 98th Cong., 2d Sess. 37–50, *reprinted in* 1984 U.S.Code & Admin.News 3220–3233.

Third, we find that the terms of imprisonment set in § 3581(b) were not intended to apply to the offenses that were assigned letter grades for the first time in § 3559, including first degree murder. Rather, they were meant to apply only to those offenses that were assigned letter classifications in the statutes describing the offenses. Section 3559 carries its own subsection specifying maximum penalties, and some of those penalties are incompatible with limits set in § 3581(b). For example, 18 U.S.C. § 3559(a)(3) classifies offenses punishable by terms of between 10 and 20 years as Class C felonies, and states in § 3559(b) that "the maximum term of imprisonment is the term authorized by the law describing the offense." 18 U.S.C. § 3559(b). By contrast, § 3581(b)(3) sets the maximum penalty for a Class C felony as 12 years. Because of the fact that the two sections authorize different maximum penalties for the same letter grade classification, we conclude that they were meant to apply to two different sets of Class C offenses. With regard to Class A offenses, we conclude that the phrase "or any period of time" in § 3581(b)(1) does not, therefore, apply to first degree murder, which was given a Class A classification for the first time in § 3559(a)(1); it applies only to those offenses that were designated as Class A in the statute describing them.

Fourth, we note that the legislative history shows that Congress did not intend to change the sentencing provisions of existing law when it introduced the grading scheme. The Committee viewed such an undertaking as requiring more careful consideration of each offense than it gave in formulating that section:

> The Committee has reexamined the desirability of amending current law in an attempt to conform sentencing provisions to the grading scheme of the bill, and has decided that a general provision such as section 3559 is preferable at this time. To amend each individual section implies that the Committee has given careful consideration to grading all existing offenses, when, in fact, this has not been the case. Instead, the Committee has postponed the restructuring of Federal offenses according to their relative seriousness. The Sentencing Commission will undoubtedly have recommendations concerning the appropriate grades for offenses as it develops sentencing guidelines.

S.Rep. No. 225, 98th Cong., 2d Sess. 87, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3270.

Finally, we note that the Sentencing Guidelines also fail to support appellant's claim that the District Court can deviate from the penalty prescribed in the underlying statute. While the Supreme Court has stated in *Mistretta v. U.S.*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), that the Sentencing Guidelines are not only constitutional but are legally binding on the courts, they do not supercede the underlying statute for any offense. The Sentencing Guidelines themselves recognize this fact. *See* United States Sentencing Commission Guidelines Manual ("Manual") at § 5G1.1. Section 5G1.1 states that if the application of the Guidelines results in a sentence either above the maximum authorized by the statute for the offense of conviction or below the minimum required by the statute, that the statutory maximum or minimum shall be the Guideline sentence.[10] In other words, the underlying statute shall control in case of conflict with the Sentencing Guidelines. The Commentary to § 2A1.1 identifies the underlying statute for first degree murder as 18 U.S.C. § 1111.[11]

The District Court was therefore correct in determining that it had no option but to impose a sentence of life imprisonment.[12] Since the Sentencing Guidelines provide no possibility of parole,[13] this may seem a harsh penalty, but that is the law as it now stands. Under the facts of this case, the recommended penalty under the Sentencing Guidelines is the same as that prescribed by the underlying statute: life imprisonment.[14]

## IV.

For the foregoing reasons, we will affirm the decision of the district court.

---

**10.** The United States Sentencing Commission Guidelines Manual, § 5G1.1, reads as follows: *Sentencing on a Single Count of Conviction*
 (a) If application of the guidelines results in a sentence above the maximum authorized by statute for the offense of conviction, the statutory maximum shall be the guideline sentence.
 (b) If application of the guidelines results in a sentence below the minimum sentence required by statute, the statutory minimum shall be the guideline sentence.
 (c) In any other case, the sentence imposed shall be the sentence as determined from the application of the guidelines.

**11.** United States Sentencing Commission Guidelines Manual at § 2A1.1, Commentary.

**12.** There is some room for a departure from the statutory minimum if the government moves for a departure, but in the case at bar, there was no such motion, nor was one appropriate. At present, the only circumstances that justify a departure from the sentence of life imprisonment for first degree murder under federal law are set out in 18 U.S.C. § 3553(e):
 Limited authority to impose a sentence below a statutory minimum.—Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense. Such sentence shall be imposed in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to section 994 of title 28, United States Code.

**13.** A term of supervised release is available for a period of a maximum of five years following a term of imprisonment, but the length of time is strictly controlled, according to the grade of the offense, and there is no parole. Manual at § 5D3.1

**14.** The court arrived at the sentence by the following steps: Under the Sentencing Guidelines, first degree murder has a Base Offense Level of 43. Manual at § 2A1.1. The Presentence Report reflects that no adjustments to the base level were appropriate and no factors warranted a departure from the Guidelines. *See* App. at 7–15. The Sentencing Table indicates that a life term is the appropriate sentence for every Level 43 offender, regardless of criminal history. *See* Manual at § 5.2. Therefore, under the normal Sentencing Guidelines procedure, as well as the underlying statute, the court had but one sentencing option: life imprisonment.
 We note that the commentary to § 2A1.1 raises the question whether life imprisonment is necessarily appropriate in a case in which the defendant did not knowingly or willingly cause the death. In the example given, the defendant, a bank robber, passes a note to a teller, who, as a result, dies of a heart attack. This court need not address here the issue of whether, in a different case, the District Court would be compelled to impose a life sentence for first degree murder. In the present case, neither the Guidelines nor the commentary suggests that any departure might be appropriate.