**UNITED STATES of America**

v.

**Walter Lefight CHURCH and Samuel Stephen Ealy, Defendants.**

**No. 1:00CR00104.**

United States District Court,
W.D. Virginia,
Abingdon Division.

July 9, 2001.

---

Thomas J. Bondurant, Jr., and Anthony P. Giorno, Office of the United States Attorney, Roanoke, Virginia, for United States of America.

James C. Turk, Jr., Stone, Harrison & Turk, P.C., Radford, Virginia, and Beverly M. Davis, Davis, Davis & Davis, Radford, Virginia, for Defendant Walter Lefight Church.

Thomas R. Scott, Jr., Street Law Firm, Grundy, Virginia, and Thomas M. Blaylock, Roanoke, Virginia, for Defendant Samuel Stephen Ealy.

## OPINION AND ORDER

JONES, District Judge.

The government seeks to impose the death penalty against the defendants under the Federal Death Penalty Act of 1994 for offenses that allegedly occurred in 1989. I find that the imposition of the death penalty under these circumstances would violate the Ex Post Facto Clause of

the Constitution. On the other hand, I find that the offenses are not barred by the noncapital statute of limitations, since the limitations period depends on the capital nature of the crime, and not on whether the death penalty is in fact available for defendants in a particular case.

## I

A Superceding Indictment was returned on February 15, 2001, charging the defendants, Walter Lefight Church and Samuel Steven Ealy, with various federal crimes related to the killings of Robert Davis, Una Davis, and Robert Hopewell on April 16, 1989. Counts Five, Six, and Seven of the Superceding Indictment charge both defendants with violating 18 U.S.C.A. § 1512(a)(1)(C) (West 2000), which prohibits the killing of another person with intent to prevent communication about a possible federal offense. In its Notices of Intent to Seek the Death Penalty, the government identifies the crimes charged in Counts Five, Six, and Seven as justifying the imposition of the death penalty against Church and Ealy if convicted.[1]

The defendants have moved to strike the death penalty on the basis that the death penalty was not available for violations of § 1512(a)(1)(C) at the time the alleged crime occurred. The statute read on April 16, 1989, as follows: "The punishment for an offense under this subsection is (A) in the case of a killing, the punishment provided in sections 1111 and 1112 of this title ...." 18 U.S.C.A. § 1512(a)(2)(A) (West 1990). The death penalty provision relevant to § 1512(a), therefore, appears in 18 U.S.C.A. § 1111(b), which provided in 1989: "Whoever is guilty of murder in the first degree, shall suffer death unless the jury qualifies its verdict ..., in which event he shall be sentenced to imprisonment for life." 18 U.S.C.A. § 1111(b) (West 1990).

The defendants contend that despite the statutory language authorizing the imposition of the death penalty for violations of § 1512, relevant case law proves that the death penalty was not constitutionally enforceable at the time of their alleged commission of the crimes in this case. Thus, they argue that if they are convicted, the imposition of the death penalty would violate the Ex Post Facto Clause of the Constitution. *See* U.S. Const. art. I, § 9. I agree. For reasons discussed below, I will grant the defendants' motions to strike the death penalty.

## II

### A

■ In 1972, the Supreme Court held that the imposition of the death penalty under certain circumstances constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. *Furman v. Georgia*, 408 U.S. 238, 239–40, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972). Although the per curiam opinion is terse and does not discuss the Court's reasoning, it is generally accepted that *Furman* "held the discretionary imposition of a death penalty unconstitutional." *United States v. Gonzalez*, 922 F.2d 1044, 1048 (2d Cir.1991); *see also United States v. Donley*, 878 F.2d 735, 739 n. 8 (3d

---

1. In its Notice of Intent to Seek the Death Penalty against defendant Ealy, Counts Five, Six, and Seven are the only counts identified. In the notice for defendant Church, however, the government named Counts Two, Three, and Four in addition to Counts Five, Six, and Seven. The motions considered herein pertain only to Counts Five, Six, and Seven. Counts Two, Three, and Four charge violations of 21 U.S.C.A. § 848 (West 1999), relating to continuing criminal enterprises. The constitutionality of the death penalty under that statute is not at issue.

Cir.1989) ("[T]he discretionary imposition of the death penalty was held unconstitutional in *Furman v. Georgia* ...."). Therefore, the death penalty as provided for in several state and federal statutes became unenforceable following the *Furman* decision.

Specifically, several federal courts of appeals, including the Fourth Circuit, recognized the death penalty provision of 18 U.S.C.A. § 1111 as unconstitutional until 1994, when the Federal Death Penalty Act of 1994 was enacted with procedures that passed constitutional muster under *Furman.* *See* Pub.L. No. 103–322, tit. VI, §§ 60001–60026, 108 Stat. 1796, 1959–1982 (1994) (codified as amended at 18 U.S.C.A. §§ 3591–3598 (West 2000)). In 1973, the Fourth Circuit stated in dicta that "[s]ince the penalty provision of § 1111 is indistinguishable from those challenged in *Furman*, it is clear that, had the death penalty been imposed on defendant, such a sentence would have been void." *United States v. Watson,* 496 F.2d 1125, 1126 (4th Cir.1973). Again in 1973, the Fourth Circuit noted that the only penalty available under § 1111 after *Furman* was life imprisonment. *See United States v. Woods,* 484 F.2d 127, 138 (4th Cir.1973). In 1987, the court stated that it was "unlikely that the federal death penalty [in § 1111] can constitutionally be imposed in its current form." *United States v. Juvenile Male,* 819 F.2d 468, 470 (4th Cir.1987).

While the Fourth Circuit opinions addressing the issue did so in dicta, other circuits directly recognized the unconstitutionality of the death penalty in § 1111. In *United States v. Kaiser,* 545 F.2d 467 (5th Cir.1977), the Fifth Circuit set aside a death sentence under § 1111, stating, "We have no doubt that the Constitution has dealt this statute a lethal blow." *Id.* at 469. The court acknowledged the general consensus regarding the federal death penalty: "[T]he unanimous post-*Furman* understanding of federal courts, federal prosecutors, and Congress appears to [be] that the death penalty [cannot] constitutionally be imposed under § 1111." *Id.* at 470. It rejected the government's argument to the contrary as "border[ing] on the audacious." *Id.* at 471. Indeed, several circuits accepted as fact that the only punishment in § 1111 with continuing validity was life imprisonment. *See United States v. Gonzalez,* 922 F.2d at 1048; *United States v. Donley,* 878 F.2d at 739 n. 8.

Because 18 U.S.C.A. § 1512(a)(2) incorporates by reference the death penalty from 18 U.S.C.A. § 1111, the death penalty would have been void as to § 1512 crimes as well. While many cases addressed the unconstitutionality of the imposition of the death penalty in § 1111 standing alone, at least one court encountered a challenge to a conviction under § 1512(a)(1)(A), the same statute charged against the defendants in the present case. In an unpublished opinion, the Eastern District of Pennsylvania granted the defendant's motion to disallow the death penalty in a prosecution under § 1512(a)(1)(A). *See United States v. Burke,* No. 92–00268–01, 1992 WL 333578, at *1 (E.D.Pa. Nov.6, 1992). In *Burke,* the government argued that although § 1111 was unconstitutional standing alone, when § 1111 and § 1512(a) were read together, the Eighth Amendment was not violated. *See id.* at *3. The court rejected this argument, holding that the imposition of the death penalty was not constitutionally permissible under the statutes, whether read separately or together. *See id.* at *16–17.

### B

The Ex Post Facto Clause of the Constitution "bars application of a law 'that changes the punishment, and inflicts a

greater punishment, than the law annexed to the crime, when committed ....'" *Johnson v. United States,* 529 U.S. 694, 699, 120 S.Ct. 1795, 146 L.Ed.2d 727 (2000) (quoting *Calder v. Bull,* 3 Dall. 386, 390, 1 L.Ed. 648 (1798)). At the time the crimes alleged in the present case were committed, the death penalty provision of § 1111 was not constitutionally enforceable, and courts provided for the automatic substitution of life imprisonment for any death penalty imposed under that statute. *See Woods,* 484 F.2d at 138 ("Since the decision in *Furman* ..., the statute under which defendant was convicted of first degree murder, 18 U.S.C. § 1111, provides as the *only possible sentence* 'imprisonment for life.'") (emphasis added); *see also Donley,* 878 F.2d at 739 n. 8 (noting that since *Furman,* defendants convicted under § 1111 "automatically" received life imprisonment). In 1994, however, Congress passed the Federal Death Penalty Act of 1994, 18 U.S.C.A. §§ 3591–3598, which provided constitutionally adequate procedures for the imposition of the death penalty for certain federal crimes.

The government argues that the passage of the Federal Death Penalty Act of 1994 affected a merely procedural change to the administration of the death penalty under 18 U.S.C.A. § 1512, and therefore creates no ex post facto issue. This argument finds its support in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977). In *Dobbert,* the defendant was convicted of state capital crimes which were alleged to have occurred between December 1971 and April 1972. *See id.* at 288, 97 S.Ct. 2290. The *Furman* decision was dated June 22, 1972, and Florida's death penalty statute was judicially struck down in July 1972. *See id.* Subsequently, the Florida legislature passed a new death penalty statute in late 1972, which corrected the constitutional problems of the prior law. *See id.*

The Supreme Court found no problem with the application of the new death penalty procedures to the defendant, concluding that "the changes in the law are procedural, and on the whole ameliorative ...." *Id.* at 292, 97 S.Ct. 2290. Further explaining the procedural aspect of the change in the law, the Court noted that the new statute "simply altered the methods employed in determining whether the death penalty was to be imposed; there was no change in the quantum of punishment attached to the crime." *Id.* at 293–94, 97 S.Ct. 2290.

The Court also rejected the defendant's argument that there was no constitutional death penalty "in effect" at the time his crimes were alleged to have occurred. *See id.* at 297–298, 97 S.Ct. 2290. Noting that Florida's death penalty statute had not yet been found unconstitutional at the time of the killings, the Court stated,

> Whether or not the old statute would in the future withstand constitutional attack, it clearly indicated Florida's view of the severity of murder and of the degree of punishment which the legislature wished to impose upon murderers. The statute was intended to provide maximum deterrence, and its existence on the statute books provided fair warning as to the degree of culpability which the State ascribed to the act of murder.

*Id.* at 297, 97 S.Ct. 2290. Therefore, the government argues, the death penalty is permissible in the present case because the subsequent changes to the federal death penalty law have been merely procedural, and the defendants were on notice at the time of the killings that Congress intended to apply the death penalty to violators of § 1512, even if it could not be constitutionally applied at the time.

*Dobbert* does not control the present case. First of all, the distinction between

procedural and substantive changes in ex post facto analysis has been subsequently rejected by the Supreme Court. In *Collins v. Youngblood*, 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), the Court clarified its earlier position, stating, "by simply labeling a law 'procedural,' a legislature does not thereby immunize it from scrutiny under the *Ex Post Facto* Clause. Subtle *ex post facto* violations are no more permissible than overt ones." *Collins,* 497 U.S. at 46, 110 S.Ct. 2715 (internal citations omitted). The Court expressly rejected the procedural/substantive distinction as confusing, *see id.* at 45, and instead declared adherence to the classic standard for ex post facto analysis originally stated in *Calder v. Bull,* 3 Dall. at 390–92, 1 L.Ed. 648. *See id.* at 49, 110 S.Ct. 2715. As paraphrased by the Court, laws violate the Ex Post Facto Clause if they

> punish as a crime an act previously committed, which was innocent when done; ... *make more burdensome the punishment for a crime, after its commission;* ... [or] deprive one charged with crime of any defense available according to law at the time when the act was committed.

*Id.* at 52, 110 S.Ct. 2715 (emphasis added). The vitality of *Dobbert*'s procedural distinction is therefore questionable.

Furthermore, even if *Dobbert*'s procedural distinction survives, the facts of that case are distinguishable from the present one. When the *Dobbert* defendant allegedly committed his crimes, the Florida death penalty statute existed and was presumed constitutional. *See Dobbert* at 297–98, 97 S.Ct. 2290. *Furman* did not call the statute into question until after the crimes had occurred. *See id.* at 288, 97 S.Ct. 2290. Therefore, the defendant would have been subjected to the death penalty if he had been indicted and tried immediately after the killings, and the new death penalty procedures under which he was actually tried only made the death penalty more difficult to obtain.

In the present case, however, the death penalty provision of § 1111 was already considered unconstitutional at the time of the acts for which the defendants stand accused. *See Watson,* 496 F.2d at 1126; *Kaiser,* 545 F.2d at 470. In 1989, life imprisonment was the only available punishment under § 1111. *See Woods,* 484 F.2d at 138; *Donley,* 878 F.2d at 739 n. 8. Therefore, this case is distinguishable from *Dobbert,* where the defendant's crimes were indeed punishable by death at the time of their commission, and the later changes in the law merely altered the procedural pathway to that end. Unlike the defendant in *Dobbert,* the defendants would not have been on notice that their crimes were punishable by death, even though the statute was still "on the books." In other words, if the defendants had been indicted and tried immediately after the killings, they could not have been subjected to the death penalty, regardless of procedure, because of the *automatic substitution* of life imprisonment in such cases.

While there appear to be no federal cases addressing the imposition of the death penalty via the Federal Death Penalty Act of 1994 for crimes committed during the period in which the federal death penalty was unconstitutional, several state courts have addressed ex post facto challenges to the imposition of the death penalty under state law. Following *Dobbert,* several courts concluded that on the facts before them, a death penalty statute was applicable to the defendant even if it was enacted after the crimes were alleged to have occurred because the changes were merely "procedural" and "ameliorative." *See, e.g., People v. District Court,* 834 P.2d 181, 198–202 (Colo.1992) (en banc); *State v. McKoy,* 327 N.C. 31, 394 S.E.2d 426, 432 n. 3 (1990). On the other hand, other

courts held that where a revised death penalty statute expanded the availability of the death penalty by providing different legal requirements for its imposition than those in existence at the time of the crime's commission, the new law could not be applied ex post facto. *See, e.g., Bowen v. State,* 322 Ark. 483, 911 S.W.2d 555, 562–564 (1995); *People v. Ramey,* 152 Ill.2d 41, 178 Ill.Dec. 19, 604 N.E.2d 275, 284–287 (1992).

I conclude that as applied to Church and Ealy, the Federal Death Penalty Act of 1994 cannot be considered ameliorative, but in fact imposes a greater punishment than was available at the time the crime was committed. In *State v. Logan,* 277 S.C. 252, 286 S.E.2d 125 (1982), the Supreme Court of South Carolina faced an ex post facto challenge under facts similar to the present case. In *Logan,* the defendant committed his crime when the state death penalty provision was considered unconstitutional. The state sought the death penalty under a statute passed after the commission of the crime, arguing that because the death penalty statute was "on the books," the defendant had notice that the death penalty was a possible consequence of his crime. *See id.* at 126. The court rejected this argument:

> We do not think the mere declaration that the punishment for murder shall be death, with no means or authority to enforce it, could serve to warn a defendant that the State might seek the death penalty if he committed murder. The fact remains that, despite this statutory declaration, the maximum punishment under the statute was life imprisonment. The statutory declaration had to be ignored by the courts and constituted no legally effective warning to the public.

*Id.* at 126–27. I find this reasoning to be persuasive. While *Dobbert* does note that a statutory death penalty gives a defendant "fair warning" that the death penalty may be applicable to his crime, *Dobbert,* 432 U.S. at 297, 97 S.Ct. 2290, the statute at issue in that case was presumed constitutional at the time the crime occurred. A statute cannot, however, provide fair warning to a defendant where the statute is constitutionally ineffective. I therefore reject those cases, *see, e.g., Smith v. Commonwealth,* 219 Va. 455, 248 S.E.2d 135, 147 (1978), that charge defendants with knowledge of dead-letter statutory law, but not with knowledge of the relevant judge-made law governing at the time of a crime's commission.

In conclusion, to allow the death penalty as a possible punishment in the present case would "make more burdensome the punishment for a crime, after its commission." *See Collins,* 497 U.S. at 52, 110 S.Ct. 2715. While the death penalty provision was "on the books" in 1989, it was known to be unenforceable, and criminal defendants prosecuted between 1972 and 1994 were not subjected to it. To apply the death penalty to the defendants now in 2001 would be an increase in their punishment based on the happenstance of their delayed indictment. Therefore, the imposition of the death penalty would violate the Ex Post Facto Clause of the Constitution. I will strike the death penalty as to Counts Five, Six, and Seven of the Superceding Indictment.

### III

The defendants have also moved to dismiss Counts One, Five, Six, and Seven, arguing that the counts are time-barred according to the general statute of limitations of five years for noncapital crimes. *See* 18 U.S.C.A. § 3282 (West 2000). There is no statute of limitations for capital crimes. *See* 18 U.S.C.A. § 3281 (West 2000). The question, therefore, is whether the charged crimes are properly character-

ized as noncapital or capital crimes. The case law addressing this question is clear that the charged crimes are "capital" for purposes of determining the appropriate statute of limitations, regardless of what punishment is actually sought or available.

## A

■ Count One charges both defendants with violating 21 U.S.C.A. § 846 (West 1999) and 21 U.S.C.A. § 848(e)(1)(A) (West 1999). Section 846 provides that "[a]ny person who ... conspires to commit any offense ... shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the ... conspiracy." 21 U.S.C.A. § 846. The government alleges that the defendants conspired to violate 21 U.S.C.A. § 848(e)(1)(A), which provides a maximum penalty of death. *See* 21 U.S.C.A. § 848(e).

The defendants argue that because the government has not given notice of its intent to seek the death penalty as to Count One for either defendant, the crime cannot be considered a "capital" offense, and is therefore time-barred. It has been held that for purposes of determining the appropriate statute of limitations under 18 U.S.C.A. §§ 3281 and 3282, a court must look to the seriousness of the crime rather than the actual punishment to be received. *See United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir.1995); *United States v. Edwards*, 159 F.3d 1117, 1128 (8th Cir. 1998). Therefore, that the government has not expressed an intention to seek the death penalty for Count One does not render a violation of 21 U.S.C.A. § 848(e) a noncapital offense.

In support of their motion, the defendants cite to several cases that have held that certain procedural provisions required for capital crimes are not applicable where the government has stipulated that it will not seek the death penalty. *See, e.g., United States v. Vallez*, 653 F.2d 403, 405–06 (9th Cir.1981) (upholding the denial of extra peremptory challenges where the government stipulated that it would not seek the death penalty). These cases are not applicable here. As explained in *Manning,* statutes of limitations provisions "derive their justification from the serious nature of the crime rather than from a concern about, for example, what procedural protections those who face a penalty as grave as death are to receive." *Manning,* 56 F.3d at 1196. Therefore, Count One is not time-barred.

## B

■ The defendants next argue that Counts Five, Six, and Seven are time-barred because the death penalty provision of the crime charged, 18 U.S.C.A. § 1512, was considered to be unconstitutional at the time of the alleged commission of the crimes. The defendants contend that because the death penalty was not available as a punishment, the crime is not capital, and the five-year statute of limitations in 18 U.S.C.A. § 3282 applies.

As discussed above, whether or not a crime is capital does not rest on the punishment actually sought or received, but rather the penalties provided for in the statute. Specifically, the Fourth Circuit has held that even where a death penalty provision could not be constitutionally enforced, a crime with a death penalty provision should still be considered a "capital offense" for other purposes. *See United States v. Watson,* 496 F.2d 1125, 1127–28 (4th Cir.1973); *see also United States v. Whittle,* No. 97–4113, 1998 WL 10372 at **1–2 (4th Cir. Jan.14, 1998) (unpublished) (finding no statute of limitations for capital offense even where death penalty provision was unconstitutional at time of commission of crimes). The *Manning* court addressed

the distinction between whether the death penalty may be constitutionally imposed and whether a crime is considered capital for other purposes:

When a decision renders unconstitutional a penalty for an offense, it does 'not necessarily have the effect of invalidating all statutes that were tied to the concept of a 'capital' case. If the statute's purpose derives from the nature of the offense with which the defendant is charged and not from the potential severity of the punishment, it remains in effect.' "

*Manning,* 56 F.3d at 1196 (quoting *United States v. Kennedy,* 618 F.2d 557, 558 (9th Cir.1980) and citing *Watson,* 496 F.2d at 1128). The court concluded that by providing for a death penalty in a statute, "Congress has made the judgment that some crimes are so serious that an offender should always be punished if caught." *Id.* Therefore, for purposes of determining the appropriate statute of limitations, the court should look to the "serious nature of the crime" as reflected in the statutory language rather than the actual penalty to be imposed. *Id.*

In a case factually similar to the present one, *United States v. Emery,* 186 F.3d 921 (8th Cir.1999), the court rejected a defendant's argument that the indictment charging him with violating 18 U.S.C.A. § 1512 was time-barred because the death penalty provision was unconstitutional in 1990, when the crime was committed. The court concluded that because § 1512 has always contained a death penalty provision, it is a capital crime for which no statue of limitations applies. *See id.* at 924.

Under this reasoning, reflected in Fourth Circuit case law, I find that a violation of 18 U.S.C.A. § 1512 constitutes a capital offense, even where, as here, the death penalty cannot be constitutionally imposed on the defendants. *See Watson,* 496 F.2d at 1127–28; *Whittle,* No. 97–4113, 1998 WL 10372 at **1–2. It is not inconsistent to apply the Ex Post Facto Clause to prohibit the death penalty here, while at the same time finding that the noncapital penalty statute of limitations does not apply. The latter is a matter of statutory construction and of determining congressional intent from the plain language of the statute, while the former is the application of a constitutional prohibition. I therefore will deny the defendants' motions to strike Counts Five, Six, and Seven as time-barred.

## IV

For the foregoing reasons, it is **ORDERED** that:

1. The defendants' Motions to Strike the Death Penalty (Doc. Nos. 95 & 139) are granted; and

2. The defendants' Motions to Dismiss Time Barred Counts (Doc. Nos. 108 & 134) are denied.