PUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
          *Plaintiff-Appellee,*

v.

SAMUEL STEPHEN EALY,
          *Defendant-Appellant.*

No. 02-4901

Appeal from the United States District Court
for the Western District of Virginia, at Abingdon.
James P. Jones, District Judge.
(CR-00-104)

Argued: January 22, 2004

Decided: April 2, 2004

Before MOTZ, KING, and DUNCAN, Circuit Judges.

Affirmed by published opinion. Judge Motz wrote the opinion, in which Judge King and Judge Duncan joined.

## COUNSEL

**ARGUED:** Thomas Ralph Scott, Jr., STREET, STREET, STREET, SCOTT & BOWMAN, Grundy, Virginia, for Appellant. Thomas Ernest Booth, Civil Division, Appellate Staff, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Thomas M. Blaylock, Roanoke, Virginia, for Appellant. John L. Brownlee, United States Attorney, Thomas J. Bondurant, Jr., Assistant United States Attorney, Anthony P. Giorno, Assistant

United States Attorney, UNITED STATES DEPARTMENT OF JUS-
TICE, Washington, D.C., for Appellee.

## OPINION

DIANA GRIBBON MOTZ, Circuit Judge:

In 2000, a federal grand jury returned an indictment charging Sam-
uel Stephen Ealy with one count of conspiracy to murder while work-
ing in furtherance of a continuing criminal enterprise ("CCE"), three
counts of murder while working in furtherance of a CCE, and three
counts of murder with the intent of preventing communication about
the commission of crimes to a law enforcement officer. These charges
stem from murders committed in 1989. A jury convicted Ealy of all
of the charged crimes and the district court sentenced him to life in
prison. Ealy appeals, contending *inter alia*, that the statute of limita-
tions barred his prosecution for these offenses. Although Ealy recog-
nizes that the charged crimes carry the possibility of the death penalty
and that no limitations period applies to capital offenses, he maintains
that a court could not have constitutionally imposed the death penalty
for these crimes and so the five-year statute of limitations generally
applicable to non-capital offenses prevents his prosecution. Because,
as the district court held, "the limitations period depends on the capi-
tal nature of the crime, and not on whether the death penalty is in fact
available for defendants in a particular case," *United States v. Church*,
151 F. Supp. 2d 715, 717 (W.D. Va. 2001), and because Ealy's other
contentions are meritless, we affirm.

### I.

All of Ealy's convictions arise from his involvement in the April
16, 1989 murders of Robert Davis, Una Davis, and Robert Hopewell.
For several years preceding his murder, Robert Davis had worked for
a drug trafficking organization led by the local town mayor, Charles
Gilmore. Ealy also purportedly had a relationship with Gilmore's
organization, both as a purchaser and an occasional seller.

In April 1989, Gilmore received a "target letter" from the United
States Attorney's Office advising him that an investigation had

uncovered evidence linking him to the commission of a federal crime. Having learned of this letter, on April 15, Davis assertedly threatened to "spill his guts." Early the next day, neighbors found Davis and his wife, Una, shot to death outside their home; shortly thereafter, police found Davis' son, Robert Hopewell, shot to death in a closet inside the home.

At the crime scene, state and local investigators discovered six spent .12 gauge shotgun shell casings, later determined to be fired from a single shotgun similar to one that Ealy allegedly took from his half-brother's bedroom shortly before the murders. The officers also found tire impressions in a pool of one of the victim's blood, light blue paint tracing on a rock wall, and a broken taillight assembly.

The next morning, two of the local investigating officers, Sheriff William Osborne and Deputy Lonnie Howington, speculated that perhaps the damaged car had been taken to John Mark Ealy, Ealy's brother and a local mechanic, for repairs. Pursuing this theory, the officers drove to the garage where John Mark did his auto work, which was adjacent to the house where Ealy lived with his mother and siblings. Seeing that the lights in the garage were on and that the smaller, standard-sized door to the garage was unlocked and open, the two officers entered the garage to determine if John Mark was there. Once inside, they noticed a vehicle with light blue paint, which was damaged and had "red splotches on it, as appeared to be blood." Osborne walked over to the car and read the license plate number to Howington, who recorded it in a notebook.

The officers then left the garage and drove to the police department, where they learned that the car was registered to Ealy. Osborne returned to the Ealy residence and obtained the consent of Ealy's mother to enter the garage while Howington went to Ealy's workplace and brought Ealy back to his residence. The police eventually removed the car from the garage and impounded it. Subsequent trace evidence from the crime scene matched the car's paint, tires, and taillight receptacle, and DNA tests matched the blood on the car to Robert Davis's blood.

In 1991, the Commonwealth of Virginia tried Ealy in state court for the murders; the state trial judge, however, suppressed the evidence

involving the light blue vehicle, and the jury acquitted Ealy.[1] Believing he could not be reprosecuted for the Davis murders, Ealy allegedly told several people that he had killed the Davis family at the request of Gilmore, who was afraid Davis might cooperate with federal investigators.

In late 2000, the United States charged Ealy with one count of conspiracy to kill a person while working in furtherance of a continuing criminal enterprise (CCE), in violation of 21 U.S.C. § 846 and § 848(e)(1)(A) (1988) (Count 1); three counts of killing a person while working in furtherance of a CCE, in violation of 21 U.S.C. § 848(e)(1)(A) (1988) (Counts 2-4); and three counts of killing a person, with intent to prevent the person from communicating crimes to a federal law enforcement agent, in violation of 18 U.S.C. § 1512(a)(1)(C) (1988) (Counts 5-7). The jury convicted Ealy on all counts and the district court sentenced him to life in prison.

On appeal, Ealy challenges his convictions on numerous grounds. Only one merits extensive discussion.

II.

Ealy claims that the five-year statute of limitations imposed by 18 U.S.C. § 3282 (1988) bars his prosecution for all of the offenses involved in this case because the offenses occurred in 1989 and the Government did not file a federal indictment until 2000.

---

[1]After conducting an evidentiary hearing, the district court viewed the evidence differently and refused to grant Ealy's motion to suppress. *United States v. Ealy*, 163 F. Supp. 2d 633 (W.D. Va. 2001). The district court found that John Mark used the garage to perform commercial auto work for town locals and that potential customers seeking his services would simply enter the garage if the lights were on and the small door was open. *Id.* at 635-36. The court further found that Sheriff Osborne and Deputy Howington entered the garage in precisely the manner that potential customers entered. *Id.* at 636. Given these specific findings of fact, which we cannot hold clearly erroneous, we must, for the reasons given by the district court, *id.* at 637-38, reject Ealy's contention that the officers' warrantless entry into the garage violated his Fourth Amendment rights.

Ealy recognizes that § 3282 applies only to "any offense, *not capital*," and, further, that § 3281 provides that "[a]n indictment for any offense *punishable by death* may be found *at any time without limitation*." 18 U.S.C. §§ 3281-3282 (1988) (emphases added). He also recognizes that the Government charged him, and the jury convicted him, of violating 21 U.S.C. § 848(e)(1)(A) and 18 U.S.C. § 1512(a)(1)(C), both of which expressly allow for a death sentence. Moreover, before trial the Government filed notices of intent to seek the death penalty on the § 848(e)(1)(A) and § 1512(a)(1)(C) counts. Nevertheless, Ealy contends that the death penalty could not have been constitutionally imposed for the § 1512 offenses because of the Supreme Court's opinion in *Furman v. Georgia*, 408 U.S. 238, 239-40 (1972), *see Church*, 151 F. Supp. 2d at 717-18, or for the § 848 offenses because the Government did not allege any of the § 848 statutory aggravating factors in the indictment, *see United States v. Higgs*, 353 F.3d 281, 298-99 (4th Cir. 2003). As a result, he argues that none of these offenses were "punishable by death" under § 3281 but were instead "not capital" for limitations purposes.

Even assuming Ealy is correct that the death penalty could not have been constitutionally imposed for these crimes, we agree with the district court that whether a crime is "punishable by death" under § 3281 or "capital" under § 3282 depends on whether the death penalty may be imposed for the crime under the enabling statute, *not* "on whether the death penalty is in fact available for defendants in a particular case." *Church*, 151 F. Supp. 2d at 717, 722.

We have long recognized that a court's inability to impose the death penalty for a particular crime repeals neither the statute making that crime punishable by death nor statutes that "depend for their operation on the defendant being charged with a 'capital crime.'" *United States v. Watson*, 496 F.2d 1125, 1127 (4th Cir. 1973). Even if a court cannot impose the death penalty for an offense, that does not render the offense "not capital" with respect to other statutes "predicated in their operative effect upon the concept of capital crime." *Id.* Accordingly, we held in *Watson* that although *Furman* likely rendered unconstitutional the imposition of the death penalty for first degree murder under 18 U.S.C.A. § 1111 (1969), a defendant indicted under § 1111 retained the right to two attorneys pursuant to 18 U.S.C.A. § 3005 (1969) (entitling a defendant indicted for a "capi-

tal crime" to two attorneys). *Watson*, 496 F.2d at 1127-29; *see also United States v. Boone*, 245 F.3d 352, 360-61 (4th Cir. 2001) (reiterating the *Watson* holding and extending it to a case brought after the 1994 amendments to § 3005, in which the Government never sought the death penalty).

Although *Watson* dealt specifically with § 3005, we did not restrict our analysis to that statute but extended it generally to all statutes that "depend upon whether a defendant is charged with a capital offense," specifically including the limitations statute, § 3281. *Watson*, 496 F.2d at 1127. Further, even though *Watson* concerned death penalty provisions in federal statutes rendered constitutionally unenforceable under *Furman*, its rationale applies equally to death penalty provisions rendered unenforceable for other reasons — including potentially deficient indictments under *Higgs*.[2]

Thus, *Watson* dictates the result here: even if imposition of the death penalty would be unconstitutional, all of the violations alleged in this case are still "capital crimes" for limitations purposes under §§ 3281-3282.[3] *Id.* Accordingly, we conclude that the district court correctly determined that none of the alleged counts were time-barred.

---

[2]As for Count 1 — the charge of conspiring to violate § 848(e)(1)(A) — Ealy argues that this Count is not capital because the Government did not file a notice of intent to seek the death penalty with respect to it. But the *Watson* rationale also compels the conclusion that the Government's failure to seek the death penalty for a crime does not render that crime "not capital" for purposes of §§ 3281-3282. *See, e.g.*, *Boone*, 245 F.3d at 360-61 (finding that *Watson* compels this conclusion for purposes of § 3005).

[3]We note that in *Watson* we suggested, in dicta, that if we were convinced that a "defendant's exposure to the risk of imposition of the death penalty was the sole reason" for the enactment of a statute, the constitutional inability to impose a death sentence might justify "judicial repeal" by removing a case from "the literal scope of a statute." *Id.* at 1128. *But see Boone*, 245 F.3d at 360-61 (suggesting clear statutory language controls). Because the risk of the death penalty is plainly not the "sole reason" for tying limitations to the "capital" nature of a crime, we need not here resolve whether this rationale could ever justify "judicial repeal" of clear statutory language. *See, e.g.*, *United States v. Manning*, 56 F.3d 1188, 1196 (9th Cir. 1995) (noting that Congress hinged the operation of a statute of limitations on the defendant being charged with a "capital crime" due to a "judgment that some crimes are so serious that an offender should always be punished if caught," rather than a judgment about the nature of the death penalty itself).

### III.

We can easily dispose of Ealy's other arguments.

First, Ealy contends that the indictment was deficient as to Counts 2-4 (the § 848(e) violations, killing in furtherance of a CCE) because it failed to allege the specific identities of the "five or more other persons" participating in Gilmore's CCE. § 848(c)(2)(A). As Ealy conceded at oral argument, *United States v. Stitt*, 250 F.3d 878, 886 (4th Cir. 2001), forecloses this contention. Ealy's similar claim that the district court erred in refusing to instruct the jury that it must agree unanimously on the identity of the "five or more other persons" fails for the same reason.

Second, Ealy argues that because a court could not have constitutionally imposed the death sentence in connection with any of the charged offenses, his trial by a "death-qualified" jury prejudiced him. Even assuming, once again, that the death penalty could not have been constitutionally imposed with regard to any of the charges here, this argument fails. The Supreme Court has ruled that "death qualification" violates neither the fair-cross-section nor the impartiality requirements of the Sixth Amendment, *Lockhart v. McCree*, 476 U.S. 162, 177-78 (1986), even when the resulting jury convicts a defendant who is not subject to the death penalty, *Buchanan v. Kentucky*, 483 U.S. 402, 415-17 (1987); *see also Furman v. Wood*, 190 F.3d 1002, 1005 (9th Cir. 1999). Ealy advances no other substantial rights that death-qualification might arguably have violated, nor does he provide any compelling argument as to why the Court's analysis in *Buchanan* should not apply here.

Ealy's last two arguments stem from the fact that all of the counts alleged that Ealy either committed the offenses himself or aided and abetted his co-defendant, Walter "Pete" Church, in committing them. Ealy contends that the evidence was insufficient to convict Church as a principal on any of the counts and that, therefore, the evidence was insufficient to convict Ealy as an aider or abettor. In *Griffin v. United States*, 502 U.S. 46, 56-57 (1991), the Supreme Court held that when a defendant is convicted of a crime based on alternative theories, and the Government produces sufficient evidence to convict on one theory, a reviewing court need not consider whether the evidence is suf-

ficient on the alternative ground. *See also United States v. Walker*, 99 F.3d 439, 442 (D.C. Cir. 1996) (applying *Griffin* to a case with allegedly insufficient evidence to support an aider and abettor theory). Therefore, because Ealy does not dispute that the evidence sufficed to convict him as a principal on all counts, whether the evidence sufficed to convict him on the alternative aiding and abetting theory is irrelevant.

Finally, Ealy argues that the district court's jury instructions with regard to aider and abettor liability erroneously suggested that the jury could convict Ealy on Counts 2-7 as an aider and abettor without finding the requisite intent on the part of Church to commit the crimes as a principal. After careful review of the instructions, we conclude that they created no "reasonable likelihood" of such a misapplication of the law. *See Boyde v. California*, 494 U.S. 370, 380 (1990).

## IV.

For the foregoing reasons, the judgment of the district court is in all respects

*AFFIRMED*