UNITED STATES, Appellee

v.

Gabriel R. CONTRERAS, Senior Airman
U.S. Air Force, Appellant

No. 09-0754

Crim. App. No. 37233

United States Court of Appeals for the Armed Forces

Argued April 7, 2010

Decided June 29, 2010

RYAN, J., delivered the opinion of the Court, in which EFFRON, C.J., and ERDMANN and STUCKY, JJ. joined. BAKER, J., filed a separate opinion concurring in the result.

Counsel

For Appellant: Captain Phillip T. Korman (argued); Major Shannon A. Bennett and Major Michael A. Burnat (on brief); Colonel James B. Roan.

For Appellee: Captain Naomi N. Porterfield (argued); Colonel Douglas P. Cordova, Lieutenant Colonel Jeremy S. Weber, and Gerald R. Bruce, Esq. (on brief).

Military Judge: Mark L. Allred

**THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.**

United States v. Contreras, No. 09-0754/AF

Judge RYAN delivered the opinion of the Court.

The charges in this case stem from an evening of drinking that culminated in Appellant and another male airman entering the room of a female airman and each performing sexual acts with her in the presence of the other.  A general court-martial convicted Appellant, in accordance with his pleas, of one specification of indecent acts (a violation of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006)) and, contrary to his pleas, of one specification each of conspiracy, rape, and housebreaking (violations of Articles 81, 120, and 130, UCMJ, 10 U.S.C. §§ 881, 920, 930 (2006), respectively).[1]  A panel composed of officer and enlisted members sentenced Appellant to a dishonorable discharge, one year of confinement, forfeiture of all pay and allowances, and reduction to the grade of E-1.  The convening authority disapproved the rape conviction and altered the sentence to a bad-conduct discharge, five months of confinement, forfeitures of all pay and allowances, and reduction to E-1.  The United States Air Force Court of Criminal Appeals (CCA) affirmed the altered findings and sentence.  United States v. Contreras, No. ACM 37233, 2009 WL 1508120, at *6 (A.F. Ct. Crim. App. May 28, 2009).

---

[1] Appellant was also charged with, but found not guilty of, one specification of indecent assault under Article 134, UCMJ.

2

We granted review of the following issue:

WHETHER THE HOUSEBREAKING CHARGE SHOULD BE SET ASIDE BECAUSE THE UNDERLYING CRIMINAL OFFENSE, INDECENT ACTS WITH ANOTHER UNDER ARTICLE 134, UCMJ, IS A PURELY MILITARY OFFENSE.

As detailed below, we conclude that indecent acts with another, a violation of Article 134, UCMJ, is not a purely military offense.

DISCUSSION

Article 130, UCMJ, outlaws unlawful entry into "the building or structure of another with intent to commit a criminal offense therein." The President, however, has narrowed this language, stating that the definition of "criminal offense" does not extend to "an act or omission constituting a purely military offense." Manual for Courts-Martial, United States pt. IV, para. 56.c(3) (2005 ed.) (MCM).[2] Appellant argues that the housebreaking specification failed to state an offense because

---

[2] The President's analysis of the punitive articles is persuasive, but not binding, authority. United States v. Miller, 67 M.J. 87, 89 (C.A.A.F. 2008) (citing United States v. Miller, 47 M.J. 352, 356 (C.A.A.F. 1997)). However, the Government expressly stated at oral argument that it was not challenging this limitation on the language of Article 130, UCMJ. Moreover, "[w]here the President's narrowing construction is favorable to an accused and is not inconsistent with the language of a statute, 'we will not disturb the President's narrowing construction, which is an appropriate Executive branch limitation on the conduct subject to prosecution.'" United States v. Guess, 48 M.J. 69, 71 (C.A.A.F. 1998) (quoting United States v. Davis, 47 M.J. 484, 486-87 (C.A.A.F. 1998)).

indecent acts (at the time a violation of Article 134, UCMJ)[3] is a purely military offense and thus cannot serve as the underlying criminal offense he allegedly had the intent to commit.  This appeal thus continues our inquiry, begun last term in United States v. Conliffe, 67 M.J. 127 (C.A.A.F. 2009), into what constitutes a "purely military offense."

A.

Whether a particular Article 130, UCMJ, "criminal offense" is a "purely military offense" is a question of law, which we review de novo.  See United States v. Rendon, 58 M.J. 221, 224 (C.A.A.F. 2003).  Although the concept of a purely military offense predates the UCMJ by several decades, the MCM has never defined the phrase,[4] and neither party here has been able to explain either the genesis or purpose of this limit on Article

---

[3] For crimes committed after October 1, 2007, indecent acts falls under Article 120(k), UCMJ.  National Defense Authorization Act for Fiscal Year 2006, Pub. L. No. 109-163, § 552(a)(2)(f), 119 Stat. 3136, 3263 (2006).

[4] The closest we have to an early MCM definition is in a separately compiled drafters' history of the 1951 MCM that -- while discussing the jurisdictional rules that eventually became Rule for Courts-Martial (R.C.M.) 201, regarding exclusive and non-exclusive jurisdiction -- defines purely military offenses as "those offenses which are not generally denounced by a civil system of justice.  They are such offenses as absence without leave, desertion, disrespect towards officers . . . and similar offenses of a military character."  Charles L. Decker et al., Legal and Legislative Basis, Manual for Courts-Martial, United States 14 (1951); accord MCM, Analysis of Rules for Courts-Martial app. 21 at A21-8 (2008 ed.) [hereinafter Drafters' Analysis] ("Military offenses are those, such as unauthorized absence, disrespect, and disobedience, which have no analog in civilian criminal law.").

130, UCMJ, prosecutions.  Almost every case referring to purely

military offenses is focused on jurisdictional issues, see,

e.g., Woodrick v. Divich, 24 M.J. 147, 150 (C.M.A. 1987); United

States v. Ornelas, 2 C.M.A. 96, 97, 6 C.M.R. 96, 97 (1952), and

among those cases there is disagreement as to how the test for

determining whether something is a purely military offense is

formulated.[5]

Given the absence of guidance, we are left with a number of

possible approaches, of which the parties urge two:  Appellant

believes that we should determine whether indecent acts is a

purely military offense by reference to the elements of the

offense itself; the Government believes that we should do so by

looking at the gravamen of the act comprising the criminal

offense and asking whether it is an act that is, or could be, a

criminal offense under the law of any state or under federal

law.

The CCA in this case adopted the latter approach.  Although

it recognized that Article 134, UCMJ, requires proof of one of

---

[5] See, e.g., United States v. Marsh, 15 M.J. 252, 254 (C.M.A.
1983) (limiting purely military offenses to those offenses where
the accused's status as a servicemember is an element of the
offense); United States v. Bailey, 6 M.J. 965, 968 (N.C.M.R.
1979) (en banc) ("In a purely military offense the accused's
status [as a member of the military] is always a part of, or
fundamentally underlies, one of the elements, but it is not,
itself, a separate element."); United States v. Rubenstein, 19
C.M.R. 709, 788 (A.F.B.R. 1955) (citing numerous cases and
treatises for definition of purely military offense as "an
offense denounced only by military law").

two "military element[s]" (that the act or omission was "prejudicial to good order and discipline" or "service discrediting"), the CCA reasoned that because a Minnesota statute, Minn. Stat. § 617.23 (2009), criminalized conduct similar to the military's definition of indecent acts, indecent acts was not a purely military offense.  2009 WL 1508120, at *3.

                              B.

    The Government asks us to adopt the CCA's approach and consider state laws that arguably prohibit the conduct that constituted the "indecent acts" in this case.  But this approach is inconsistent with Conliffe, our only published opinion analyzing purely military offenses in the context of the housebreaking statute, Article 130, UCMJ.

    In Conliffe, a United States Military Academy cadet unlawfully entered both the barracks room of a fellow cadet and an Academy sports team's locker room, where he set up cameras to record women changing clothes and showering.  67 M.J. at 130. He was charged with, and pleaded guilty to, three specifications of housebreaking, with the intended criminal offense upon entry for each specification being conduct unbecoming an officer and a gentleman (an Article 133, UCMJ, 10 U.S.C. § 933 (2000), offense).  67 M.J. at 129-30.  We held that the housebreaking convictions could not stand because Article 133, UCMJ, is a purely military offense.  67 M.J. at 132-33.  The Government

invited us in <u>Conliffe</u> to engage in a survey of state law

similar to what the CCA did here, and to reference state laws

criminalizing voyeurism (the conduct that was the basis for the

Article 133, UCMJ, charge) to determine that the Article 133,

UCMJ, offense was not a purely military offense.  67 M.J. at 133

n.2.  But we expressly declined that invitation, <u>id.</u>, focusing

instead on the fact that Article 133, UCMJ:

> necessarily requires proof that the accused is a
> commissioned officer, cadet, or midshipman because the
> conduct must have disgraced or dishonored the accused
> in his or her official capacity. . . . Only a
> commissioned military officer, cadet, or midshipman
> can commit the offense and it is only a court-martial
> that has jurisdiction to prosecute such an offense.

67 M.J. at 132 (citations and quotation marks omitted).

Our analysis focused on the status of the offender under

the statute itself:  Could Article 133, UCMJ, be violated by a

person who is not a member of the military?  The answer was

clearly "no."  By its own terms, Article 133, UCMJ, requires

that the accused be a "commissioned officer, cadet, or

midshipman," and "[t]he focus of Article 133, UCMJ, is the

effect of the accused's conduct on his status as an officer,

cadet, or midshipman."  <u>Id.</u>  This focus on status was consistent

with <u>Marsh</u>, where we determined, in another context, that

unauthorized absence, Article 86, UCMJ, 10 U.S.C. § 886 (1982),

was a "'peculiarly military' offense, for by its express terms

7

the statutory prohibition applie[d] only to a 'member of the armed forces.'" 15 M.J. at 254.

Neither the CCA nor the parties to this case have given us a good reason to depart from this elements-based approach, which determines whether an offense is a "purely military offense" by reference to whether the elements of the underlying crime, either directly or by necessary implication, require that the accused be a member of the military. Nor is the Court aware of any important development in the short time since Conliffe was decided that would lead us to reconsider this analytic framework.

Moreover, this approach has the benefit of being consistent with the historical context in which the MCM was created. Part of the genesis behind the modern MCM was the understanding that military justice may be administered by non-lawyers, see United States Army, The Army Lawyer: A History of the Judge Advocate General's Corps, 1775-1975 206 (1975), sometimes in distant locations with only a MCM to guide them. We are not convinced that the President expected these non-specialists to conduct a fifty-state survey before deciding whether to charge a servicemember with housebreaking.[6] It is equally as consistent

---

[6] Even if one were to conduct such a survey, it would only lead to more questions: Do the jurisdictions that prohibit the conduct need to actually enforce the statute? How many

with the stated purpose and historical context of the MCM that the President intended a simple, bright-line test that could be easily applied and determined by reference to the MCM itself. See MCM, Drafters' Analysis app. 21 at A21-1 ("[I]t was determined that the Manual for Courts-Martial should be sufficiently comprehensive, accessible, and understandable so it could be reliably used to dispose of matters in the military justice system properly, without the necessity to consult other sources, as much as reasonably possible.") (emphasis added).

Therefore, consistent with our decision in Conliffe, we decline to determine whether an offense is a purely military offense by conducting a survey of, or making other reference to, state and federal law. We devolve instead to consideration of the elements of the underlying offense.

C.

In this case, the underlying offense in the housebreaking specification is indecent acts. At the time Appellant committed his crimes, indecent acts with another was prohibited under Article 134, UCMJ. The statutory text of Article 134, UCMJ, provides that:

> Though not specifically mentioned in this chapter, all disorders and neglects to the prejudice of good order and discipline in the armed forces, all conduct of a nature to bring discredit upon the armed forces, and

---

jurisdictions must outlaw similar conduct before a crime loses its purely military character?

> crimes and offenses not capital, of which persons subject to this chapter may be guilty, shall be taken cognizance of by a general, special, or summary court-martial, according to the nature and degree of the offense, and shall be punished at the discretion of that court.

The President, in the discussion section of the MCM, provides further limitations to this broad statutory language, stating that in order to punish indecent acts with another under Article 134, UCMJ, the Government must prove:

> (1) That the accused committed a certain wrongful act with a certain person;
> (2) That the act was indecent; and
> (3) That, under the circumstances, the conduct of the accused was to the prejudice of good order and discipline in the armed forces or was of a nature to bring discredit upon the armed forces.

MCM pt. IV, para. 90.b.

Article 134, UCMJ, by its terms, applies to anyone "subject to this chapter."  Under the UCMJ, that phrase includes a variety of individuals who are not in the military.  See Article 2(a), UCMJ, 10 U.S.C. § 802(a) (2006).  Appellant's contention that any crime charged under clause 1 or 2 of Article 134, UCMJ, must be a purely military offense is therefore incorrect -- the text of the UCMJ provides that Article 134, UCMJ, might be violated by persons who are not and never have been in the military.[7]

---

[7] Referencing Article 2(a), UCMJ, in the context of determining what constitutes a purely military offense does not answer or prejudge the altogether different question of whether non-

10

Of course, the MCM further limits the application of some offenses listed under Article 134, UCMJ, to military members only. See, e.g., MCM pt. IV, paras. 83.b (fraternization); 84.b (gambling with subordinate). These are purely military offenses. Other crimes, however, are not so limited, nor would anyone otherwise consider them to be purely military offenses despite the necessity of proving and pleading that the conduct was service discrediting or prejudicial to good order and discipline. See, e.g., id. paras. 66.b (bribery and graft); 92.b (kidnapping); 97.b (pandering and prostitution).[8]

---

servicemembers may be prosecuted under the UCMJ. Whether something is a "purely military offense" depends on whether the UCMJ limits prosecution for the offense to servicemembers or contemplates the prosecution of a non-servicemember, not on whether a non-servicemember may in fact be prosecuted in a particular case. See, e.g., United States v. Stebbins, 61 M.J. 366, 369 (C.A.A.F. 2005) (holding that in determining whether death was the maximum authorized punishment for rape a court "need not answer the question of whether [the accused] may actually be sentenced to death"); Willenbring v. Neurauter, 48 M.J. 152, 180 (C.A.A.F. 1998) (holding that rape was a capital crime for statute of limitation purposes regardless of whether the necessary factors were present to sentence the accused to death in that case); United States v. Ealy, 363 F.3d 292, 296-97 (4th Cir. 2004) (holding that the statutory question of whether to apply the limitation period for capital or for non-capital offenses did not depend on whether the death penalty could be constitutionally imposed for the offense in question); United States v. Manning, 56 F.3d 1188, 1195-96 (9th Cir. 1995) (same).

[8] Of course, as always, the President's analysis of the punitive articles is persuasive authority and may potentially further limit the application of some punitive articles to military members only, just as he limited the application of the housebreaking statute to cases where the underlying offense was something other than a purely military offense. See supra note 2 and accompanying text. This Court can consider such a

The application of Article 134, UCMJ, to punish indecent acts with another is not limited to military members, either expressly or by necessary implication.  Consequently, Appellant's housebreaking specification stated a viable offense when it alleged he unlawfully entered a fellow airman's room with the intent to commit indecent acts.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.

---

Presidential limitation while applying an elements-based approach.  Contra Contreras, __ M.J. at __ (5) (Baker, J., concurring in result).  And in the unlikely event that we are presented with a case where a person unlawfully entered the building or structure of another with the intent to jump from a vessel, wrongfully cohabitate therein, or any of the other examples described by the concurring opinion, see id. at __ (2 & n.2, 4-5), we are confident that we can fairly address those situations under the framework set forth in Conliffe and further explained here.

United States v. Contreras, No. 09-0754/AF

BAKER, Judge (concurring in the result):

I agree with the conclusion in this case: the offense of indecent acts as charged under clause 1 or 2 of Article 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 934 (2006), is not a purely military offense. However, I disagree with the Court's analysis in reaching this conclusion.

In particular, the majority adopts an "elements test" to determine whether an offense is "purely military" in nature:

> Therefore, consistent with our decision in Conliffe, we decline to determine whether an offense is a purely military offense by conducting a survey of, or making other reference to, state and federal law. We devolve instead to consideration of the elements of the underlying offense.
>
> . . . .
>
> Article 134, UCMJ, by its terms, applies to anyone "subject to this chapter." Under the UCMJ, that phrase includes a variety of individuals who are not in the military. See Article 2(a), UCMJ, 10 U.S.C. § 802(a) (2006). Appellant's contention that any crime charged under clause 1 or 2 of Article 134, UCMJ, must be a purely military offense is therefore incorrect -- the text of the UCMJ provides that Article 134 might be violated by persons who are not and never have been in the military.

United States v. Contreras, __ M.J. __ (9-10) (C.A.A.F. 2010).[1]

In short, because the text of clause 1 of Article 134, UCMJ,

_____

[1] The majority cites United States v. Conliffe, 67 M.J. 127 (C.A.A.F. 2009), in support of its "elements-based" approach, suggesting that Conliffe was based on the statutory status of a commissioned officer, i.e., that the element of the offense includes one's status as a commissioned officer. To the contrary, the Conliffe analysis was contextual. The analysis

refers to "persons subject to this chapter," and Article 2, UCMJ, 10 U.S.C. § 802 (2006), potentially reaches civilians, the majority concludes that the offense of indecent acts is not a purely military offense.  Of course, by the same "elements" reasoning, effecting an unlawful enlistment, failing to obey a general regulation, hazarding a vessel, and malingering would not be purely military offenses.[2]  Such a conclusion, as a practical matter, largely may be irrelevant in the context of Article 130, UCMJ, 10 U.S.C. § 930 (2006); however, the term has jurisdictional implications as well.  The President has employed the term in Rule for Courts-Martial 201(d)(1) in the jurisdictional context stating, "Courts-martial have exclusive jurisdiction of purely military offenses."  Moreover, the

---

was not exclusive, but rather focused on the nature of the offense:  "The focus of Article 133, UCMJ, is the effect of the accused's conduct on his status as an officer, cadet, or midshipmen. . . ."  Id. at 132.  This reference to status is not statutory, but rather directed to an officer's status as a leader.  As a result, only a commissioned military officer, cadet, or midshipman could commit the offense, because only such persons could undermine their leadership status in the same roles.  That Conliffe offered a contextual perspective, rather than an elements-based rule, was reinforced in note 2 stating: "[We] decline to decide today whether an Article 134, UCMJ, offense can serve as the underlying criminal offense in a housebreaking charge, we note that Articles 133 and 134, UCMJ, contain at least one significant difference."  Id. at 133.

[2] Articles 84, 92, 110, and 115, UCMJ, 10 U.S.C. §§ 884, 892, 910, 915 (2006).  Under Article 134, UCMJ, the following offenses would also not be considered purely military ones: disloyal statements, jumping from a vessel into the water, and straggling.

majority seems to prejudge both the jurisdictional issues and substantive law issues that might arise were a civilian charged with a violation of the UCMJ.

The better approach when determining whether an offense is "purely military" for the purposes of Manual for Courts-Martial, United States pt. IV, para. 56.c(3) (2005 ed.) (MCM), is that taken by this Court prior to this case, which entails examination of the gravamen of the offense, and not just the elements.  In this regard, civilian practice with reference to federal and state law is not dispositive, as the Government seems to suggest, but it may offer relevant context, just as the absence of any "persons subject to this chapter" other than military members being charged with an offense, might help to inform a judgment as to whether an offense was purely military in nature.

An "elements test" is superficially appealing for a number of reasons.  First, it appears to offer certitude, in lieu of the case-by-case analysis required from contextual analysis. Second, in some cases the "purely military" nature of the offense may be easily ascertained from the statutory elements language.  Likewise, the MCM further limits some offenses under Article 134, UCMJ, through elements that expressly confine the offense to military members.  However, the fact that an "elements test" gets to the right result in some cases

(including this one) does not make it an appropriate substitute for the contextual analysis heretofore required and applied in this area of law.

A quick review of the punitive articles set forth in the MCM reveals why. Consider the offense of malingering under Article 115, UCMJ, 10 U.S.C. § 915 (2006). Under the UCMJ, the offense applies to "[a]ny person subject to this chapter." The elements of this offense do not appear to limit the offense to military members. It is not until one resorts to contextual analysis beyond the statutory elements of the offense read with Article 2(a), UCMJ, that one learns in the explanation section in the MCM for this offense that we see the limitation to "work, duty, or service . . . expected of one in the military service." MCM, pt. IV, para. 40.c(1). Thus, notwithstanding the statutory language and the absence of a limitation in the statutory elements, one would otherwise consider this a purely military offense. Consider also the offense of wrongful cohabitation under clause 1 or 2 of Article 134, UCMJ, where "the accused and another person openly and publicly lived together as husband and wife" when they were not in fact married. MCM, pt. IV, para. 69.b(1). Again, the elements do not appear to limit the offense to military members and under the majority's paradigm, one would not otherwise consider this a purely military offense. However, in the wake of United States Supreme Court cases about

individual privacy rights, it would seem that no one other than perhaps a military member would be subject to prosecution for this offense.

In short, while the expedience of the "elements-based" approach may possess some superficial appeal, where we are implicating the application of military law to civilians, as the majority does here, we should paint with a fine contextual brush rather than a broad one of black letter law.  Moreover, if applied literally the majority's analysis will result in absurd results.  More likely, the Court will revert to contextual analysis, in which case it is not adopting an "elements test" at all, but rather adding a layer of confusion to the law, by in fact applying a contextual approach, while purporting to apply a black letter and predictable rule.  This is suggested by the opinion's language stating:  "Other crimes, however, are not so limited, nor would anyone otherwise consider them to be purely military offenses . . . ."  Contreras, __ M.J. at __ (11).  In short, the majority's analysis is either incorrect -- suggesting that a slew of purely military offenses apply to civilians -- or it is confusing -- suggesting that a review of statutory elements and Article 2, UCMJ, will determine which offenses are purely military when in fact this Court and practitioners are really intended to look to the nature of the offense in context to determine whether it is purely military in nature.

5