**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date:  **February 21, 2018**

**No. A-1-CA-35323**

**STATE OF NEW MEXICO,**

 Plaintiff-Appellee,

v.

**DALLAS HNULIK,**

 Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF EDDY COUNTY**
**Lisa B. Riley, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Laurie P. Blevins, Assistant Attorney General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
William A. O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**KIEHNE, Judge.**

{1}     Defendant appeals his conviction for second-degree murder arising from the shooting of his girlfriend, Brandy Capps (Victim). Defendant argues that statements made by Victim should not have been admitted at trial because they were inadmissible hearsay, and that his conviction must be reversed. We hold that all but one of the challenged statements were properly admitted under Rule 11-803(3) NMRA. The remaining statement was not admissible under any exception to the rule against hearsay, but its admission was harmless error. Defendant also challenges the admission of evidence about a previous domestic violence dispute between him and Victim. We hold that the domestic dispute evidence was admissible under Rule 11-404(B) NMRA.

**BACKGROUND**

{2}     Defendant was in a romantic relationship with Victim for the two years that preceded her death. The evidence showed that the relationship was rocky and Defendant occasionally became violent with Victim. At the time of Victim's death at the end of July 2010 she lived in Lubbock, Texas, but was visiting Defendant and friends in Artesia, New Mexico, where she used to live. On the day of Victim's death, Defendant was in the driver's seat of Victim's car as the couple set out from

Defendant's father's house to run errands. Victim was in the passenger seat. Defendant testified that he reached into the back seat area to get a revolver, and as he brought the gun to the front seat area, it went off. A bullet struck Victim in the face and she died as a result of the gunshot wound.

{3}      At trial, the State argued that Defendant intentionally shot Victim to prevent her from testifying against him in a domestic violence case pending against him in Lubbock, and out of anger because she planned to break up with him. Defendant testified that the shooting was an accident and that the gun simply "went off." Defendant claimed that the gun was in a bag of clothing in the back seat of the car. He testified that he did not know the hammer of the gun was cocked, and that as he was bringing the gun over the seat, the gun fired accidentally.

{4}      Among the evidence the State presented to prove that the shooting was not an accident, Victim's friends and family testified about statements Victim had made to them. Collectively, they testified that Victim stated that she was anxious to leave Artesia and never return, and that she wanted to break off her relationship with Defendant. The State also presented evidence of a 2009 domestic violence incident in Artesia involving the couple in which the officer who arrested Defendant heard him shout "I'm not going to jail over this shit," and saw him standing over Victim in an aggressive manner.

{5} Defendant challenges the admission of Victim's statements on hearsay grounds, and argues that the domestic violence incident was improper propensity evidence and that it was unfairly prejudicial. For the reasons that follow, we are not persuaded.

**DISCUSSION**

{6} "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72. An abuse of discretion occurs when a trial court "exercises its discretion based on a misunderstanding of the law." *State v. Vigil*, 2014-NMCA-096, ¶ 20, 336 P.3d 380.

**I.     Two of Victim's statements were relevant to negate Defendant's accident defense**

{7} The State introduced statements that Victim made to two witnesses, Brooklyn Edwards, Victim's niece, and Dova Cronian, a former coworker and friend of Victim's. Defendant objected to these statements as hearsay. The Court admitted the statements made to Ms. Edwards as both excited utterances and evidence of Victim's state of mind and future intent, and it admitted the statements made to Ms. Cronian as evidence of Victim's state of mind.

{8} Ms. Edwards was one of Victim's closest friends. Ms. Edwards testified that Victim moved to Lubbock from Artesia because she wanted to start getting her life together, go to school, and leave Defendant. She understood that Victim planned to

3

go to Artesia for the weekend in order to get the rest of her belongings and to talk to Defendant to "get things figured out." Ms. Edwards testified that Victim called her on Friday night, the night before the shooting, and said that she was upset, angry, ready to go home to Lubbock, "tired of everything" and frustrated. Victim also told her that she and Defendant had been fighting. Victim planned to get all of her things, go home to Lubbock, said she was "done with him," and did not want to return to Artesia.

{9} Ms. Cronian testified that Victim called her because Victim had run out of gas in Defendant's mother's driveway. She stated that Victim sounded anxious and said "please hurry and come over here and bring me gas as fast as you can get here." When Ms. Cronian arrived, Victim said that she "needed [Ms. Cronian] to get the gas as soon as [she] could because [Victim] needed it so she could leave as soon as possible." Victim told Ms. Cronian that she was going back to Lubbock and was never returning to Artesia.

{10} Ms. Cronian invited Victim to go with her to get the gas, but Victim said that she could not, again asking Ms. Cronian to hurry because "she needed to leave as soon as possible," and stated that she would explain later why she could not go with her. After dropping off the gas, Ms. Cronian called Victim and asked her if she would be all right, and Victim replied, "I will be. I will be leaving as soon as I can, and I'm

gonna get the fuck out of here, and I'm never fucking coming back." Victim then assured Ms. Cronian that she would call her as soon as she got onto the highway to Lubbock.

{11} "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *State v. King*, 2015-NMSC-030, ¶ 24, 357 P.3d 949 (internal quotation marks and citation omitted); s*ee* Rule 11-801(C) NMRA. "Hearsay is not admissible except as provided by [the New Mexico Rules of Evidence] or by other rules adopted by [our] Supreme Court or by statute." Rule 11-802 NMRA. One such exception permitted by the Rules is a hearsay statement showing the declarant's "then-existing mental, emotional, or physical condition." Rule 11-803(3). This includes statements which show the declarant's "motive, intent or plan." *Id.* Our Supreme Court has held that while evidence demonstrating the declarant's state of mind is admissible as an exception to the rule against hearsay, evidence explaining the reasons for the declarant's state of mind is inadmissible. *King*, 2015-NMSC-030, ¶ 27. "Although [Rule 11-803(3)] allows hearsay statements that show the declarant's then existing mental condition, the rule does not permit evidence explaining why the declarant held a particular state of mind." *State v. Leyba*, 2012-NMSC-037, ¶ 13, 289 P.3d 1215 (internal quotation marks and citation omitted); *State v. Baca*, 1995-NMSC-045, ¶ 19, 120 N.M. 383, 902 P.2d 65 (same).

{12} But it is not enough that a declarant's statements fall within the state-of-mind hearsay exception; they must also be relevant to some issue in the case. *See* Rule 11-401 NMRA ("Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and . . . the fact is of consequence in determining the action."). *Baca* indicates that in a criminal prosecution, statements within the state-of-mind exception are admissible only if the declarant's state of mind is of consequence to the determination of the declarant's conduct. 1995-NMSC-045, ¶ 20; *see Leyba*, 2012-NMSC-037, ¶ 15 (indicating that statements expressing a declarant's mental state must be relevant). "When the state of mind does not prove or negate action or inaction by the declarant, then admissibility of hearsay state-of-mind evidence must be considered under some other rule." *Baca*, 1995-NMSC-045, ¶ 20.

{13} *Baca* explains that evidence of a crime victim's state of mind is commonly relevant, and properly admissible, to help a jury decide issues of "(1) self defense (rebutted by extrajudicial declarations of the victim's passive state of mind), (2) suicide (rebutted by statements inconsistent with a suicidal bent), and (3) accident (rebutted by [the] victim's fear of placing self in way of such harm)." *Id.* ¶ 21. Such evidence of the victim's state of mind "is a relevant part of the conduct in question[,]" because it "precedes and informs the conduct." *Id.* That sort of properly-admitted

6

evidence "is distinguishable from a state of mind that arises out of the conduct and is relevant not because it itself is of consequence but only because an inference can be drawn therefrom to make the existence of some other fact more or less probable." *Id.* The latter sort of evidence, which is offered after the fact to show "the truth of the underlying facts rather than solely to show state of mind," must be excluded because of the danger that "the jury will consider the victim's statement of fear [as] somehow reflecting on [the] *defendant's* state of mind rather than the victim's[.]" *Id.* ¶ 22 (internal quotation marks and citations omitted).

{14}     Under this standard, all of Victim's statements made to Ms. Edwards and Ms. Cronian were properly admitted, except for Victim's statement to Ms. Edwards that she was upset because she and Defendant had been fighting, which we will address below. These statements demonstrated Victim's state of mind and future intent: that she was upset, wished to end her relationship with Defendant, and intended to return home to Lubbock as soon as possible. Evidence of Victim's state of mind was relevant because it "preced[ed] and inform[ed] the conduct" at issue. *Id.* ¶ 21. At trial, Defendant claimed that the shooting was an accident. In support of this claim, defense counsel argued that although Victim and Defendant had arguments, their relationship was generally good, and that there was no tension or argument between them in the hours leading up to the shooting. Victim's statements were relevant because they

7

provided a possible motive for the shooting—Defendant's anger over her plan to break up with him—and rebutted Defendant's claim that he shot Victim by accident. Defendant acknowledged that they had been arguing immediately before the shooting when he said, "I don't even remember what we were arguing about." In closing argument, the State asked the jury to consider Victim's statements as evidence that Defendant had a motive to shoot Victim.

{15}     Defendant argues, however, that Victim's statements were irrelevant because his own mental state was the only one at issue. Defendant argues that statements about a victim's state of mind might be admissible to rebut a defense claim that a victim's own conduct caused his or her accidental death, but here there was no claim that Victim fired the gun. Instead, Defendant never disputed that he fired the fatal gunshot, and the only question was whether he intended to shoot Victim, or whether the shooting was an accident. According to Defendant, Victim's plans shed no light on his intent, but statements about her plans were improperly offered to show his motive.

{16}     In support of his claim, Defendant relies on our Supreme Court's opinions in *Baca* and *Leyba*, but those opinions are distinguishable. First, neither opinion disapproves of evidence about a victim's state of mind that is relevant to show the existence of a possible motive for the defendant's actions. Second, both opinions

8

involved very different facts that made the state-of-mind statements then at issue inadmissible.

{17}     First, *Baca* did not involve a claim of self-defense, accident, or suicide. In *Baca*, the defendant was charged with killing his wife by shooting her, and then running over her and their three-year-old daughter with a car. *See Baca*, 1995-NMSC-045, ¶¶ 1-2. His defense was that another man committed the crimes. *See id.* ¶ 8. The daughter survived, and later nodded her head when a therapist asked if she was afraid of her father. *See id.* ¶ 9. Testimony about this non-verbal statement was admitted against the defendant at trial. *See id.* ¶ 11. On appeal, our Supreme Court held that this statement was both irrelevant and unfairly prejudicial. *Id.* ¶¶ 20-22. Our Supreme Court explained that state-of-mind evidence is frequently relevant when a criminal defendant raises issues of self-defense, suicide, or accident: "In such cases the state of mind of the victim is a relevant part of the conduct in question[,]" because it "precedes and informs the conduct." *Id.* ¶ 21. That sort of evidence "is distinguishable from a state of mind that arises out of the conduct and is relevant not because it itself is of consequence but only because an inference can be drawn therefrom to make the existence of some other fact more or less probable." *Id. Baca* held that the daughter's after-the-fact fear of her father was inadmissible because it had not been offered solely to show the daughter's state of mind, but was instead offered to prove "that her

9

father attempted to kill her and that he did in fact kill her mother[.]" *Id.* ¶ 22.

{18}     Second, the daughter's statement in *Baca* was irrelevant because it said nothing about her state of mind *before* the criminal act occurred, and thus provided no relevant information about the crime itself or the defense. Instead, the daughter's statement arose out of the alleged conduct and was offered for the improper purpose of encouraging the jury to infer that because the daughter was afraid of her father, he must be guilty as charged. Here, by contrast, Victim's statements related to her state of mind before the shooting, and were relevant because they demonstrated the existence of a possible motive for Defendant to shoot her.

{19}     Defendant's reliance on *Leyba* is equally unavailing. In that case, the defendant killed his pregnant girlfriend and her father, but claimed that he acted in self-defense. 2012-NMSC-037, ¶¶ 2-4. At trial, the state offered excerpts from the victim's diary in which the victim wrote that her boyfriend (i.e. the defendant) had beat her up, and she expressed fear of the defendant based on those acts. *See id.* ¶¶ 3, 8. Our Supreme Court held that some of the statements were improperly admitted because they did not reflect the victim's state of mind at the time she wrote them. But even those that did were irrelevant because "anxiety or confusion or even her fear proves nothing without the cause of those emotions—[the d]efendant's alleged prior acts—which are not admissible under this hearsay exception." *Id.* ¶ 15. The state did not explain why the

victim's fear was relevant, and thus the statements were only offered to show the defendant's state of mind, which was improper. *See id.* ¶¶ 15-16. In other words, the cause of the victim's fear was not properly admitted under the state-of-mind exception, and the victim's fear, by itself, did not rebut the defendant's self-defense claim. Here, by contrast, all of Victim's statements except her statement that she was upset because she and Defendant had been fighting were properly admitted under the state-of-mind exception, and they were relevant because they showed the existence of a possible motive for the shooting.

{20}     We are not alone in holding that a victim's statements of intent to break up with or divorce a partner or spouse are properly admitted to show the existence of a motive to commit violence on the part of the partner or spouse. For example, in *State v. Calleia*, 20 A.3d 402, 419 (N.J. 2011), the New Jersey Supreme Court held that a wife's statements of intent to divorce her husband were admissible, along with other evidence of their deteriorating relationship, to show that her husband had a motive to kill her. The court acknowledged general statements in previous case law that evidence of a victim's state of mind should not be used to prove a defendant's motivation or conduct, but clarified that the correct rule is that a "deceased victim's then-existing state of mind cannot directly prove a defendant's motive; the state-of-mind exception to the hearsay rule does not permit imputation of a defendant's state

of mind out of no more than a deceased person's feelings about that defendant." *Id.* at 412-13. In other words, "subject to certain exceptions, a fact probative of the victim's state of mind, standing alone, does not tend to prove any material fact about a defendant's conduct or state of mind." *Id.* at 413. But "[w]hen a victim's projected conduct permits an inference that [the] defendant may have been motivated by that conduct to act in the manner alleged by the prosecution, the statement satisfies the threshold for relevance." *Id.* at 415. Other courts have reached similar conclusions. *See, e.g.*, *United States v. Donley*, 878 F.2d 735, 738 (3d Cir. 1989) (stating that the defendant claimed he killed his wife in the heat of passion after finding her with another man; evidence that the victim said she planned to leave the defendant was properly admitted "to persuade the jury to infer from her statements that she had such a plan and, in turn, to infer from that plan and the defendant's awareness of it that he had a motive for murder other than the one he claimed"); *Pierce v. State*, 705 N.E.2d 173, 176 (Ind. 1998) (allowing evidence of the victim's statements indicating a poor relationship with the defendant as relevant "to controvert defense evidence" that the defendant and the victim "were getting along well at the time of the murder"); *Commonwealth v. Tassinari*, 995 N.E.2d 42, 49 (Mass. 2013) (noting that evidence of the victim's request for divorce and her statements indicating a tense relationship with her husband were relevant to the defendant husband's motive to kill her). We

hold that Victim's statements were properly admitted under Rule 11-803(3).

**II.     Admission of Victim's hearsay statement that she and Defendant had been fighting was erroneous but harmless error**

{21}     Ms. Edwards's testimony that Victim said she was upset because she and Defendant had been fighting was inadmissible as evidence of Victim's state of mind, because New Mexico law is that the state-of-mind exception does not include any statement which explains the cause of the declarant's state of mind. *See King*, 2015-NMSC-030, ¶ 27; *Leyba*, 2012-NMSC-037, ¶ 13 ("Although [Rule 11-803(3)] allows hearsay statements that show the declarant's then-existing mental condition, the rule does not permit evidence explaining why the declarant held a particular state of mind." (alteration, emphasis, internal quotation marks, and citation omitted)); *Baca*, 1995-NMSC-045, ¶ 19 (same).

{22}     Neither was the statement admissible as an excited utterance under Rule 11-803(2). Statements which relate to a startling event or condition, and are made while the declarant is "under the stress or excitement" of the "startling event or condition," can be admitted as excited utterances. Rule 11-803(2). The rationale for allowing their admission is that the exciting event or condition causes the declarant to experience such surprise, "shock, or nervous excitement" that he or she temporarily lacks the "capacity for conscious fabrication." *State v. Suazo*, 2017-NMSC-011, ¶ 11, 390 P.3d 674 (internal quotation marks and citation omitted). A court should consider

13

the totality of the circumstances and several factors to determine the amount of "reflection or spontaneity" behind the statement. *Id.* (internal quotation marks and citation omitted). Such factors include: the amount of "time [that] passed between the startling event and the statement[;]" whether "the declarant had an opportunity for reflection and fabrication; how much pain, confusion, nervousness or emotional strife the declarant was experiencing at the time of the statement; whether the statement was self-serving; and whether the statement was made in response to an inquiry." *Id.* (alteration, internal quotation marks, and citation omitted). There is no specific time frame in which the statement must be made to fall under Rule 11-803(3). *State v. Hernandez*, 1999-NMCA-105, ¶ 15, 127 N.M. 769, 987 P.2d 1156. Rather, the inquiry turns on whether the victim was under the stress and strain of the excitement at the time the statement was made. *State v. Lopez*, 1996-NMCA-101, ¶ 31, 122 N.M. 459, 926 P.2d 784.

{23} At trial, the State argued that the statements made to Ms. Edwards were excited utterances because Ms. Edwards stated that Victim was yelling and on the verge of tears while she was making the statements. On appeal, however, the State does not defend the district court's ruling that this statement was admissible as an excited utterance, and with good reason. The State did not present evidence about the factors used to determine the spontaneity of the statement. The State did not, for example,

14

present evidence about when the argument between Defendant and Victim occurred, so it is not possible to determine the amount of time which passed between the startling event and the statement, or to determine whether Victim had time to reflect or fabricate. Further, no evidence was presented to show whether this argument was of the kind that would cause Victim to experience so much "pain, confusion, nervousness, or emotional strife" that she would have been unable to reflect or fabricate her statements. *Suazo*, 2017-NMSC-011, ¶ 11 (internal quotation marks and citation omitted). Thus, we hold that the statement was not admissible as an excited utterance under Rule 11-803(2).

{24}     The State contends that even if this Court were to hold that the testimony at issue on appeal in this case was inadmissible, its admission was harmless error. Defendant does not address the effect the errors he alleges had on the verdict. Improperly admitted evidence is reviewed for non-constitutional harmless error. *See State v. Serna*, 2013-NMSC-033, ¶ 23, 305 P.3d 936. Non-constitutional error is harmless "when there is no reasonable probability [that] the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (emphasis, internal quotation marks, and citation omitted). Harmless error review "requires a case-by-case analysis." *Id.* ¶ 44.

{25}     We hold that the admission of the hearsay statement through Ms. Edwards was

harmless error, because there is no reasonable probability that the inadmissible evidence contributed to Defendant's conviction. *See id.* ¶¶ 36, 43. Regardless of the admission of the hearsay statement, there was ample evidence that Defendant was abusive to Victim and that the couple had a tumultuous relationship, and thus the statement was cumulative. Victim's mother testified, without objection, that she started to dislike Defendant "when the abuse began." Ms. Edwards also testified, without objection, that she had heard Defendant threaten Victim before, making statements such as "I'm gonna whoop your ass," and "I'll kill you, bitch." Ms. Edwards also explained her understanding that Victim did not intend to drop the domestic violence charges pending against Defendant in Lubbock. Again, no objection was made to this testimony. Defendant himself testified that he was physical with Victim "a couple times," before retreating and stating that he only hit her one time, which led to his arrest in Lubbock. Ms. Cronian testified that Victim was acting anxiously and strangely on the day of the shooting. Further, there was no objection to the testimony of another witness, Pam Grey, who stated that on the day before the shooting, Victim sent her a text message saying that she wanted to leave Artesia. Evidence was also presented that, shortly following the shooting, Defendant either said "I don't even remember what we were arguing about," or "we weren't even fighting." A reasonable juror could infer from this statement that the couple was

arguing, and that Defendant intended to shoot Victim, but upon later reflection realized that his reasons for doing so were inadequate.

{26} Testimony was also presented from an acquaintance of Defendant who was then incarcerated for violation of probation, and had previously been convicted of felonies including forgery. The witness testified that he was working at a car wash in Artesia while Defendant was there, and that they saw a friend of Victim drive by. Defendant gestured rudely at Victim's friend, and explained to the witness that he and Victim were arguing at the time of the shooting, that Victim was yelling at him so he grabbed a gun, and that Victim had spat in Defendant's face. At that point, Defendant told the witness that he shot Victim. Defendant later asked the witness not to say anything. In light of all the evidence presented at trial, we find that the isolated hearsay statement that Victim and Defendant had been arguing was harmless error.

**III.    Defendant's domestic violence arrest in Artesia was properly admitted under Rules 11-404(B) and 11-403**

{27} At trial, the State presented evidence of Defendant's arrests in Lubbock and Artesia, both of which showed that Defendant had physically abused Victim. Defendant does not argue that the admission of evidence of his June 2010 arrest in Lubbock was improper. Rather, he argues that the evidence of his 2009 arrest in Artesia was improper character evidence which should have been excluded under Rule 11-404(B), particularly because it did not result in criminal charges. Defendant

17

further argues that this evidence was more prejudicial than it was probative, and should have been excluded under Rule 11-403.

**{28}** We note that "Rule 11-404(B) is a rule of inclusion not exclusion, providing for the admission of all evidence of other acts that is relevant to an issue in trial, other than the general propensity to commit the crime charged." *State v. Phillips*, 2000-NMCA-028, ¶ 21, 128 N.M. 777, 999 P.2d 421 (internal quotation marks and citation omitted). Evidence of a prior bad act is admissible "if it bears on a matter in issue, such as intent, in a way that does not merely show propensity." *Sarracino*, 1998-NMSC-022, ¶ 22 (internal quotation marks and citation omitted). "If evidence of prior acts is relevant and admissible for a purpose other than proving a defendant's propensity to commit a crime, the probative value of the evidence must outweigh its prejudicial effect." *State v. Williams*, 1994-NMSC-050, ¶ 17, 117 N.M. 551, 874 P.2d 12, *overruled on other grounds by Tollardo*, 2012-NMSC-008, ¶ 37 n.6; *see State v. Woodward*, 1995-NMSC-074, ¶ 29, 121 N.M. 1, 908 P.2d 231, *abrogated on other grounds as recognized by State v. Montoya*, 2014-NMSC-032, ¶ 15, 333 P.3d 935.

**{29}** In this case, the State offered evidence of the dispute in Artesia to establish that Defendant had a motive to kill Victim to prevent her from testifying against him in domestic violence cases. Although the event in Artesia did not lead to formal charges, his statement at the time, "I'm not going to jail over this shit," was still relevant to

show that he generally had a strong desire not to go to jail, which supported the State's argument that he was motivated to shoot Victim in part to avoid going to jail for the Lubbock charges, which Victim had not dropped. The evidence was also relevant to rebut Defendant's efforts to portray his relationship with Victim as a loving one and his efforts to minimize the seriousness of their previous disputes. *See Woodward*, 1995-NMSC-074, ¶ 17 (holding that evidence of the defendant's violent behavior toward the victim, his wife, was admissible to show "motive, intent, plan, or knowledge"); *see also State v. Rojo,* 1999-NMSC-001, ¶ 47, 126 N.M. 438, 971 P.2d 829 (admitting evidence of the defendant's prior violent acts towards victim to rebut the defendant's argument that she loved him and had no motive to reject him).

{30} Defendant placed his own intent at issue by claiming that the gun fired by accident. *See State v. Niewiadowski*, 1995-NMCA-083, ¶ 13, 120 N.M. 361, 901 P.2d 779 (noting that the defendant placed his intent at issue by claiming that he acted in self-defense). Thus, evidence of Defendant's prior arrests for violence against Victim was admissible to rebut his claim of accident and to establish that he intended to shoot Victim, either to prevent her from testifying against him, or due to anger at her plan to break up with him, or simply during the course of one of their many arguments.

{31} We also hold that Defendant was not unfairly prejudiced by the introduction

19

of the Artesia arrest, much less that the probative value of that evidence was outweighed by unfair prejudice under Rule 11-403. "Because a determination of unfair prejudice is fact sensitive, much leeway is given trial judges who must fairly weigh probative value against probable dangers." *Woodward*, 1995-NMSC-074, ¶ 19 (internal quotation marks and citation omitted). Defendant does not explain how this evidence would confuse or mislead the jury, and we are unable to identify any such danger. Defendant began informing the jury as early as the voir dire process that he had been accused of domestic violence. In fact, although not evidence, defense counsel questioned potential jurors for approximately twenty minutes about their experiences with, and feelings about, domestic violence. Defendant admitted on the stand that he and Victim argued frequently, that he was physically abusive to Victim "a couple times," and that he hit her on the night he was arrested in Lubbock. The arresting officer for the Lubbock incident was called—without objection—to give his account of the events and testified that Victim was acting nervous and scared when he arrived on scene, and that she had a scratch on her hand and bruising on her eyelids which appeared fresh. Ms. Edwards testified about seeing Victim shortly after the incident in Lubbock. Telephone calls made by Defendant to Victim from jail were played in which the two discussed whether neighbors saw him hitting her. Given this extensive evidence that Defendant abused Victim, it cannot be said that one

additional instance of potential domestic violence against Victim was unfairly prejudicial or that any unfair prejudice outweighed its probative value.

**CONCLUSION**

{32} For the reasons set forth above, we affirm the district court's judgment and sentence.

{33} **IT IS SO ORDERED.**

_____
**EMIL J. KIEHNE, Judge**

**WE CONCUR:**

_____
**M. MONICA ZAMORA, Judge**

_____
**J. MILES HANISEE, Judge**