This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-41551**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MICHAEL WARREN JACKSON,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LEA COUNTY**
**Lee A. Kirksey, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Tyler Sciara, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** This matter was submitted to this Court on the brief in chief in the above-entitled cause, pursuant to this Court's notice of assignment to the general calendar with modified briefing. Following consideration of the brief in chief, this Court assigned this matter to Track 2 for additional briefing, pursuant to the Administrative Order in *In re Pilot Project for Criminal Appeals*, No. 2022-002, effective November 1, 2022. Now

having considered the brief in chief, answer brief, and reply brief, we affirm for the following reasons.

**Sufficiency of the Evidence**

**{2}**     Defendant appeals from his conviction, following a jury trial, of shooting at or from a motor vehicle (great bodily harm). [RP 134, 150] Defendant argues the district court erred in denying his motion for directed verdict. [BIC 5] When reviewing the denial of a motion for a directed verdict, we examine "whether sufficient evidence was adduced to support the underlying charge." *State v. Sena*, 2008-NMSC-053, ¶ 10, 144 N.M. 821, 192 P.3d 1198. "[A]ppellate courts review sufficiency of the evidence from a highly deferential standpoint." *State v. Slade*, 2014-NMCA-088, ¶ 13, 331 P.3d 930 (omission, internal quotation marks, and citation omitted). Our inquiry focuses on "whether substantial evidence of either a direct or circumstantial nature exists to support a verdict of guilty beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Montoya*, 2015-NMSC-010, ¶ 52, 345 P.3d 1056 (internal quotation marks and citation omitted). The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. We disregard all evidence and inferences that support a different result. *See State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

**{3}**     We look to the jury instructions to determine what the jury was required to find in order to convict Defendant beyond a reasonable doubt. *See State v. Holt*, 2016-NMSC-011, ¶ 20, 368 P.3d 409 ("The jury instructions become the law of the case against which the sufficiency of the evidence is to be measured." (text only) (citation omitted)). In pertinent part, in order to find Defendant guilty of shooting at or from a motor vehicle (great bodily harm), the State was required to prove the following: (1) Defendant "willfully shot a firearm at a motor vehicle with reckless disregard for another person," and "[t]he shooting caused great bodily harm to Derwin Leland," the victim; (2) Defendant acted recklessly, meaning that although "he knew that his conduct created a substantial and foreseeable risk, . . . he disregarded that risk . . . and . . . was wholly indifferent to the consequences of his conduct and to the welfare and safety of others"; (3) Defendant's actions resulted in great bodily harm, meaning "an injury to a person" that "creates a high probability of death" and results in either disfigurement or "permanent or prolonged impairment of the use of any member or organ of the body"; and (4) Defendant "acted intentionally when he committed the crime," meaning that "he purposefully [did] an act which the law declares to be a crime." [RP 122-24] The jury was further instructed that intent "may be inferred from all of the surrounding circumstances, such as the manner in which [Defendant] acts, the means used, and [Defendant's] conduct and . . . statements." [RP 125]

**{4}**     The following material evidence was presented at trial. On the night before the incident that led to Defendant's charges, Mr. Leland was at his apartment with his friend, Benny Cook, and Defendant. [BIC 1-2; AB 9] The three were drinking alcohol,

and Mr. Leland and Defendant eventually got into an argument. [Id.] The argument was apparently prompted by Mr. Leland telling Defendant to move out of the apartment, where Defendant had been staying for approximately two months. [Id.] Mr. Leland called the police following the argument, in part because Defendant had pointed a gun at him. [BIC 2; AB 9] The next morning, Defendant observed Mr. Leland and Mr. Cook removing Defendant's belongings from Mr. Leland's apartment. [BIC 3; AB 9] Mr. Cook testified that he and Mr. Leland were carrying bags of Defendant's belongings that they intended to return to Defendant. [BIC 3; 10/10/23 CD 2:44:27-45:10] Defendant confronted Mr. Leland and Mr. Cook in the apartment complex's stairwell and a physical altercation ensued. [BIC 3; AB 9] Mr. Leland fled to his vehicle and got inside, at which time Defendant took a gun out of one of the bags, stood in front of Mr. Leland's vehicle, pointed the gun at Mr. Leland, and fired through the vehicle's windshield. [BIC 3; AB 9] The bullet went through Mr. Leland's mouth and exited through his back left shoulder. [BIC 3; 10/10/23 CD 4:39:37-40:08] Surveillance camera recordings of the altercation were admitted into evidence and played for the jury. [AB 9; 10/10/23 CD 3:55:21-57:12] Law enforcement officials testified about Mr. Leland's injuries, which consisted of severe trauma to the face and required intubation. [AB 10; 10/10/23 CD 2:32:00-28; 4:39:37-40:08] Mr. Leland testified that (1) he was hospitalized for approximately a week and a half, (2) recovery from his injuries required three weeks of physical therapy, (3) he was advised by his dentist that he would always have residual pain from his injuries, and (4) his injuries prevent him from being able to consume high-temperature food and drinks. [10/10/23 CD 3:27:50-30:16]

**{5}**     In challenging the sufficiency of the evidence, Defendant argues that there were "discrepancies" in the evidence, including a lack of testimony regarding: (1) how long or how much Mr. Leland, Mr. Cook, or Defendant had been drinking the night before the shooting; (2) the details of law enforcement's response to Mr. Leland's phone call following the argument with Defendant that night; (3) the fact that law enforcement did not seize or recover a gun or "investigate any incident related to a firearm"; and (4) Defendant's brother, who was present during and involved in the argument that occurred the night before but who was not called as a witness or otherwise identified for the jury in order to rule him out as the shooter. [BIC 7-8] Defendant's argument in this regard effectively asks this Court to reweigh the evidence and substitute our judgment for that of the jury, which we will not do. *See State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 (stating that we "will not invade the jury's province as fact-finder by second-guessing the jury's decision concerning the credibility of witnesses, reweighing the evidence, or substituting [our] judgment for that of the jury" (internal quotation marks and citation omitted)). We emphasize that the question for us on appeal is whether the trial court's "decision is supported by substantial evidence, not whether the trial court could have reached a different conclusion." *State v. Ernesto M., Jr. (In re Ernesto M., Jr.)*, 1996-NMCA-039, ¶ 15, 121 N.M. 562, 915 P.2d 318.

**{6}**     Viewing the evidence in the light most favorable to the State, resolving all conflicts and making all permissible inferences in favor of the jury's verdict, we conclude that there was sufficient evidence to support the jury's finding beyond a reasonable doubt that Defendant committed the crime of shooting at or from a motor vehicle (great

bodily harm). *See Slade*, 2014-NMCA-088, ¶ 13; *see also State v. Flores*, 2010-NMSC-002, ¶ 19, 147 N.M. 542, 226 P.3d 641 (stating that "circumstantial evidence alone can amount to substantial evidence" and that "intent is subjective and is almost always inferred from other facts in the case" (alteration, internal quotation marks, and citation omitted)), *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, 478 P.3d 880; *State v. Michael S.*, 1995-NMCA-112, ¶ 7, 120 N.M. 617, 904 P.2d 595 (stating that "[i]ntent need not be established by direct evidence, but may be inferred from the [defendant]'s conduct and the surrounding circumstances). Accordingly, we further conclude that the district court did not err in denying Defendant's motion for a directed verdict.

**The District Court's Admission of Mr. Leland's Out-of-Court Statement**

**{7}** Defendant further argues that the district court abused its discretion in admitting Mr. Leland's out-of-court statement as a present sense impression. [BIC 8] "We review the admission of hearsay evidence for an abuse of discretion." *State v. Sisneros*, 2013-NMSC-049, ¶ 18, 314 P.3d 665. When reviewing the district court's admission of evidence, we recognize that "trial courts have broad latitude in exercising their discretion." *State v. Chavez*, 2008-NMCA-125, ¶ 9, 144 N.M. 849, 192 P.3d 1226. An abuse of discretion occurs when the district court's decision is clearly untenable, not justified by reason, or against the logic and effect of the facts and circumstances before the court. *State v. Ervin*, 2008-NMCA-016, ¶ 9, 143 N.M. 493, 177 P.3d 1067.

**{8}** The statement at issue arose during the State's direct examination of Detective Perez, who interviewed Mr. Leland "on-scene" while Mr. Leland received medical treatment after being shot. [BIC 4; 10/10/23 CD 4:37:48-38:03] Detective Perez testified that during the interview, he asked Mr. Leland "several questions to include if [Mr. Leland] knew or had seen who had shot him and where the incident had taken place." [BIC 4; 10/10/23 CD 4:37:48-38:13] The State asked Detective Perez to explain what Mr. Leland said in response, which prompted an objection from defense counsel on hearsay grounds. [10/10/23 CD 4:38:13-17] The State argued the anticipated testimony was admissible as an excited utterance or "first impression," and the district court sustained the objection, stating that "those aren't established yet." [BIC 4; 10/10/23 CD 4:38:17-27]

**{9}** Detective Perez next testified that he arrived at the scene "within minutes" after receiving the call about the shooting, and that medics were still actively treating Mr. Leland. [10/10/23 CD 4:38:27-48] Detective Perez stated that Mr. Leland was experiencing "major bleeding that was coming out of his mouth" and "appeared to be in shock," but was able to answer Detective Perez's questions despite actively being treated by medics. [10/10/23 CD 4:39:37-40:08] The State then informed the district court that it was going to "ask the same question as to what [Mr. Leland indicated] happened to him," and defense counsel again objected on hearsay grounds. [10/10/23 CD 4:40:08-15] The State responded that the facts to which Detective Perez would testify were already established in evidence, as Mr. Leland had previously testified as to who shot him. [10/10/23 CD 4:40:15-23] The district court found that although the facts

did not support admission of Mr. Leland's statements under the excited utterance exception to the rule against hearsay, the statement could come in under the present sense impression exception. [10/10/23 CD 4:40:23-59] Detective Perez went on to testify that during the interview, Mr. Leland "indicated he had been shot by a male who he named Mike, who was a white-complected black male with dreadlocks. [Mr. Leland] said that the incident had occurred back at his apartment complex around the bus stop. The apartment complex, [Mr. Leland] explained, . . . was the Hobbs Apartments." [BIC 5; 4:40:59-41:30]

**{10}**     Defendant contends that the district court erred in admitting Mr. Leland's out-of-court statement, arguing that the statement did not qualify as present sense impression. [BIC 9] Defendant further argues that such evidentiary error was not harmless because the statement at issue was presented to the jury through the testimony of a detective, which may be particularly impactful to a jury. [BIC 11] The State concedes that the statement at issue did not constitute a present sense impression, but argues that any evidentiary error was harmless or, in the alternative, that the statement was admissible as an excited utterance. [AB 12-13] Defendant contends that the State's excited utterance argument seeks to revive an argument already rejected by the district court and that the erroneous admission of the out-of-court statement was not harmless error. [RB 3, 7]

**{11}**     Even if we were to assume without deciding that admission of Mr. Leland's statement was an abuse of discretion, we conclude that any such error was harmless. *See State v. Griscom*, 1984-NMCA-059, ¶¶ 16-18, 101 N.M. 377, 683 P.2d 59 (proceeding to a harmless error analysis without first resolving the primary evidentiary challenge). Defendant does not assert that admission of the statement at issue constituted a confrontation rights violation, nor would the record support such a claim given that Mr. Leland testified at trial. *See State v. Berry*, ___-NMCA-___, ¶ 7, ___ P.3d ___ (A-1-CA-40788, Feb. 20, 2025) (stating that "[t]he core concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact," the purpose of which is "served by the combined effect of the elements of confrontation—physical presence, oath, cross-examination, and observation of demeanor by the trier of fact" (alterations, internal quotation marks, and citations omitted)). We therefore review this issue for nonconstitutional harmless error. *See State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936 (providing that evidentiary error that does not implicate confrontation rights is reviewed for nonconstitutional harmless error). "[N]on[]constitutional error is harmless when there is no reasonable *probability* the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (internal quotation marks and citation omitted). In determining "the likely effect of the error" under this standard, "courts should evaluate all of the circumstances surrounding the error. This requires an examination of the error itself, which [may] . . . include an examination of the source of the error and the emphasis placed upon the error." *Id.* ¶ 43; *see also State v. Leyba*, 2012-NMSC-037, ¶ 24, 289 P.3d 1215 ("To put the error in context, we often look at the other, non[]objectionable evidence of guilt, not for a sufficiency-of-the-evidence analysis, but to evaluate what role the error played at trial.").

**{12}** Here, Mr. Leland's statements—which included identification of both Defendant and the location of the incident—were cumulative of other evidence and corroborated by other witnesses. *See State v. Johnson*, 2004-NMSC-029, ¶¶ 11, 39, 136 N.M. 348, 98 P.3d 998 (examining the cumulative versus corroborative nature of improperly-admitted evidence and providing that "[t]he probative force—and therefore the possible prejudicial effect—of a particular piece of evidence tends to decrease the more redundant that evidence is in the context of other similar evidence"); *see also State v. Arguello*, 2024-NMCA-074, ¶ 7, 557 P.3d 1018, (concluding that even if the district court erred in admitting a witness's out-of-court statements, any such error was harmless because the statements "were cumulative of other evidence and were corroborated by other witnesses on all material points"), *cert. denied* (S-1-SC-40560, Sept. 27, 2024). Additionally, there was ample evidence of Defendant's guilt notwithstanding Mr. Leland's out-of-court statement. For example, Mr. Leland testified that on the morning of the incident, Defendant ran after him as he was walking to his vehicle, and that once he was in his vehicle, Defendant shot him in the lip. [10/10/23 CD 3:09:54-10:48, 3:11:30-12:10] Further, the jury reviewed the surveillance camera recordings of the altercation, and both Mr. Cook and the downstairs neighbor testified that on the morning of the incident, they each saw Defendant shoot Mr. Leland. [10/10/23 CD 3:55:21-57:12; 2:45:00-46:35; 4:26:05-28:42]

**{13}** Determining the credibility of witnesses is a core function of the jury, and we do not substitute our judgment for that of the jury by reweighing the evidence presented at trial. *See State v. Smith*, 2024-NMCA-068, ¶ 1, 556 P.3d 988; *Garcia*, 2011-NMSC-003, ¶ 5. Considering Mr. Leland's out-of-court statement within the context of the additional non-objectionable evidence presented at trial, and under our standard for nonconstitutional harmless error, we conclude there to be no reasonable probability that any error resulting from the admission of Mr. Leland's isolated hearsay statement affected the jury's verdict. *See Serna*, 2013-NMSC-033, ¶ 23; *Leyba*, 2012-NMSC-037, ¶ 24; *see also State v. Hnulik*, 2018-NMCA-026, ¶¶ 24, 26, 458 P.3d 475 (concluding that any error resulting from the admission of an isolated hearsay statement was harmless "[i]n light of all the evidence presented"). We therefore further conclude that any error resulting from the admission of Mr. Leland's out-of-court statement to Detective Perez was harmless.

**{14}** Based on the foregoing, we affirm.

**{15} IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**JANE B. YOHALEM, Judge**

**GERALD E. BACA, Judge**